# United States Court of Appeals
## For the First Circuit

No. 00-1136

UNITED STATES OF AMERICA,

Appellee,

v.

EDWARD F. DUARTE, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Selya, Lynch and Lipez,
Circuit Judges.

H. Ernest Stone, by appointment of the court, for appellant.
Michael D. Ricciuti, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Dina Michael Chaitowitz, Assistant United States Attorney, were on brief, for appellee.

April 17, 2001

**SELYA, <u>Circuit Judge</u>.** Defendant-appellant Edward F. Duarte, Jr., entered a guilty plea to multiple counts of possessing marijuana with intent to distribute and conspiring to possess marijuana with intent to distribute. The district court imposed a 151-month incarcerative sentence. Duarte appeals, asserting that the lower court's determination of drug quantity under a preponderance-of-the-evidence standard elevated his sentence above the five-year statutory maximum for trafficking in unspecified amounts of marijuana and thereby contravened the rule laid down in <u>Apprendi</u> v. <u>New Jersey</u>, 120 S. Ct. 2348 (2000). Because Duarte did not advance this argument below, we review for plain error. Discerning none, we affirm.

## I. BACKGROUND

Duarte was a ringleader in a massive conspiracy that transported marijuana from California and distributed it in and around Taunton, Massachusetts. The conspiracy operated successfully for several years, but the authorities eventually brought the perpetrators to book. On September 11, 1997, a federal grand jury sitting in the District of Massachusetts charged Duarte with multiple counts of marijuana trafficking and money laundering. Although the body of the indictment did not mention specific drug quantities, special notices were appended

-2-

to two of the marijuana-trafficking counts.  One such notice read:

> The offense described in Count Three involved one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana.  Accordingly, Title 21, United States Code, Section 841(b)(1)(A)(vii), applies to this count.

A similar notice described Count Nine as involving one hundred kilograms or more of marijuana and invoked the penalty provision set forth in 21 U.S.C. § 841(b)(1)(B)(vii).[1]

Duarte originally denied the charges.  On April 14, 1999, however, he reversed course.  His ensuing guilty plea encompassed eight counts of possession of marijuana with intent to distribute, three counts of conspiracy to possess marijuana with intent to distribute, and two counts of conspiracy to launder money.  See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 1956(h).  Counts Three and Nine were included in the compendium of counts to which Duarte pleaded guilty.  The plea agreement

---

[1]The first of these statutes, 21 U.S.C. § 841(b)(1)(A)(vii), provides for a minimum sentence of ten years and a maximum sentence of life in prison where a violation of 21 U.S.C. § 841(a) involves 1,000 kilograms or more of a mixture or substance containing marijuana.  The other statute, 21 U.S.C. § 841(b)(1)(B)(vii), provides for a minimum sentence of five years and a maximum sentence of forty years where a violation of 21 U.S.C. § 841(a) involves one hundred kilograms or more of a mixture or substance containing marijuana.

between Duarte and the government prominently featured drug quantity. In that agreement, Duarte took explicit responsibility for handling 1,000 to 3,000 kilograms of marijuana.

At the disposition hearing, held on December 1, 1999, the district court divided the charges into two groups. See USSG §3D1.1(a)(1). As to the eleven marijuana counts, the court accepted Duarte's aforesaid admission anent drug quantity and, accordingly, set the base offense level at 32. See id. §2D1.1(c)(4) (mandating base offense level of 32 for offenses involving at least 1,000 but less than 3,000 kilograms of marijuana). The court then added four levels for Duarte's role in the offense. See id. §3B1.1(a) (prescribing a four-level upward adjustment for a defendant's leadership role in an extensive criminal activity).

Duarte's adjusted offense level on the grouped marijuana counts (36) was higher than his adjusted offense level on the grouped money laundering counts (30), so the court brought the combined offense level to 37. See id. §3D1.4 (directing that one level be added to the higher group where the second group registers five to eight levels less). Subtracting three levels for acceptance of responsibility, see id. §3E1.1(b), produced a total offense level of 34. Since Duarte

-4-

had no prior criminal record, that yielded a guideline sentencing range of 151-188 months.  See id. Ch.5 Pt.A (sentencing table).  The court thereupon sentenced Duarte to concurrent 151-month terms on each of the thirteen counts of conviction.  This appeal followed.

## II.  ANALYSIS

In Apprendi, 120 S. Ct. at 2362-63, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Duarte challenges the sentence imposed for each of the eleven marijuana counts based on this rule.[2]  The thrust of his argument is that, absent a specification of drug quantity in the indictment and its determination by a jury beyond a reasonable doubt, he should have been sentenced to no more than the lowest statutory maximum applicable to marijuana trafficking (five years, see 21 U.S.C. § 841(b)(1)(D)).

We divide our analysis of this argument into three segments.  We first examine the statutory scheme under which

_____

[2]Duarte's brief ignores the money laundering counts, so we assume that he concedes the propriety of the sentences imposed on those counts.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-5-

Duarte was charged, convicted, and sentenced. We next ponder whether an _Apprendi_ error occurred. Assuming, _arguendo_, the existence of such an error, we proceed to explore the consequences.

**A**

Duarte pleaded guilty to eight counts of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and three counts of conspiring to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Because section 846 adopts by cross-reference the penalties provided for violations of section 841(a)(1), we focus on the latter statute.

21 U.S.C. § 841(a)(1) makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The statute covers marijuana. _Id._ § 812(c), Sched. I(c)(10). The penalties for transgressing section 841(a)(1) are set out in 21 U.S.C. § 841(b). That section provides for different statutory maximums based, inter alia, on the type and quantity of the substances involved.

A violation of section 841(a) that involves 1,000 kilograms or more of a substance containing marijuana exposes the perpetrator to a maximum sentence of life imprisonment. _Id._

§ 841(b)(1)(A). A violation that involves one hundred kilograms or more of a substance containing marijuana carries a maximum sentence of forty years. Id. § 841(b)(1)(B). A violation that involves less than fifty kilograms of marijuana carries a maximum sentence of five years. Id. § 841(b)(1)(D). The catchall provision — which, by process of elimination, covers offenses involving at least fifty but less than one hundred kilograms of marijuana — carries a maximum sentence of twenty years. Id. § 841(b)(1)(C). Thus, the lowest statutory maximum — what we sometimes have called the "default statutory maximum," United States v. Robinson, 241 F.3d 115, 118 (1st Cir. 2001) — for a violation of 21 U.S.C. § 841(a)(1) involving marijuana is five years. See 21 U.S.C. § 841(b)(1)(D).

To state the obvious, Duarte's 151-month sentence on each of the eleven marijuana counts exceeds this default statutory maximum. Duarte pounces on this discrepancy and posits that the sentence imposed upon him contravenes Apprendi. This is so, he claims, because the sentencing court increased his sentence beyond the default statutory maximum based on a fact (drug quantity) that was neither charged in the indictment nor found by a jury beyond a reasonable doubt. On this basis, Duarte seeks vacation of the sentences imposed on the marijuana-trafficking counts and a remand for resentencing within the

modest confines of section 841(b)(1)(D), that is, to sentences that do not exceed five years per count. Because Duarte did not advance this argument below, we review it for plain error. See Robinson, 241 F.3d at 119; United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir. 2000), petition for cert. filed, 69 U.S.L.W. 3557 (U.S. Feb. 1, 2001) (No. 00-1256).

Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings. Johnson v. United States, 520 U.S. 461, 466-67 (1997); United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000).

**B**

The first question before us is whether the district court committed an Apprendi error. It is now settled in this and other circuits that even though an indictment is silent as to drug amount and the jury is not asked to make a specific drug-quantity determination, no Apprendi violation occurs as long as the defendant receives a sentence below the default

-8-

statutory maximum applicable to the kind of drugs at issue. Robinson, 241 F.3d at 119 (collecting cases). This holds true even if the length of the sentence has been significantly increased by facts (such as drug amount) that have been found by the sentencing court under a preponderance-of-the-evidence standard. Id.

This case, however, falls outside that safe haven because Duarte's sentence on the marijuana counts exceeded the five-year default statutory maximum limned in 21 U.S.C. § 841(b)(1)(D). Because the length of the sentence was driven largely by drug quantity — a fact neither charged in the indictment nor submitted to the jury — an Apprendi error may have occurred. E.g., United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000) (acknowledging that a sentence enhanced beyond the statutory maximum by reason of the sentencing court's drug-quantity determination reflected Apprendi error); United States v. Rogers, 228 F.3d 1318, 1327-28 (11th Cir. 2000) (similar).

It is, however, arguable that Duarte's admission in the plea agreement to the drug quantity that propelled the sentence beyond the default statutory maximum undermines the claim that an Apprendi error occurred. On this basis, one might argue that Duarte, when he pleaded guilty to dealing in a specific volume of contraband, surrendered any right either to have the

-9-

indictment phrased more specifically or to have a jury determine drug quantity. Cf. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969) (stating that a guilty plea is itself a conviction and that a defendant who pleads guilty waives multiple federal constitutional rights).

To be sure, any such argument would have to overcome Apprendi's strongly-worded suggestion that any fact, other than a prior conviction, that enhances the statutory maximum sentence for a crime must be both charged in the indictment and found by a jury beyond a reasonable doubt. See Apprendi, 120 S. Ct. at 2355 (quoting with approval Jones v. United States, 526 U.S. 227, 243 n.6 (1999)); see also United States v. Fields, 242 F.3d 393, 396 (D.C. Cir. 2001) ("In light of Apprendi, it is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums . . . the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt."); United States v. Jones, 235 F.3d 1231, 1235 (10th Cir. 2000) (stating that if drug quantity increases the statutory maximum, it must be alleged in the indictment); United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000) ("[I]f the government seeks enhanced penalties based on the amount of

drugs . . . the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt."), cert. denied, 121 S. Ct. 1152 (2001); Rogers, 228 F.3d at 1327 (holding that Apprendi requires drug quantity to be charged in the indictment and proved to a jury beyond a reasonable doubt); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.) ("[I]f the government wishes to seek penalties in excess of those applicable by virtue of the elements of the offense alone, then the government must charge the facts giving rise to the increased sentence in the indictment, and must prove those facts to the jury beyond a reasonable doubt."), cert. denied, 121 S. Ct. 600 (2000). Moreover, at least one court of appeals has found Apprendi error based on the omission of drug quantity from the indictment even though the defendant pleaded to trafficking in a specific amount of contraband sufficient to trigger the enhanced sentence. See United States v. Pease, 240 F.3d 938, 943-44 (11th Cir. 2001) (per curiam).

Despite these authorities, we see no present need to resolve the question definitively. The Apprendi Court did not rest its decision on an omission from the indictment, see 120 S. Ct. at 2334 n.3, and the outcome of this appeal does not depend on an explicit finding of Apprendi error. Consequently, we

reserve the question of whether a potential Apprendi violation, arising out of the failure to allege drug quantity in the indictment, can be short-circuited by a showing that the defendant pleaded guilty and admitted to the necessary drug quantity as part of his plea agreement. Consistent with this reservation, we assume, favorably to Duarte — but do not decide — that Duarte's sentence was imposed in violation of Apprendi.

## C

This assumption satisfies the first facet of the quadripartite plain-error test. For consistency's sake, we also assume that it satisfies the second.[3] Accordingly, this appeal turns on the third and fourth elements of the plain-error paradigm.

The next leg of the journey requires us to ascertain whether this presumed error affected the complaining party's substantial rights, that is, to gauge the likelihood that it swayed the outcome of the trial court proceedings. See Olano,

---

[3]If an error occurred, it resulted from the trial judge's understandable adherence to prevailing pre-Apprendi practice — a praxis that the Supreme Court subsequently ruled unconstitutional. See Apprendi, 120 S. Ct. at 2362-63. When a judge applies a legal regime which, though widely accepted at the time of trial, proves to be antithetic to the law as it appears at the time of direct appeal, the error is deemed sufficiently clear to satisfy the second part of the test for plain error. Johnson, 520 U.S. at 468.

507 U.S. at 734.  The complaining party bears the burden of showing such prejudice.  Id.

Duarte's argument on this point has the virtue of simplicity.  In his view, Apprendi error elongated his sentence and, thus, affected his substantial rights.  But the government advances no fewer than three reasons why any such error did not impart cognizable prejudice.  First, it maintains that Duarte would in all events have faced the same period of incarceration because the court imposed an unchallenged 151-month sentence on the two money laundering counts.  Second, it asseverates that, even if each marijuana count had been capped at five years, USSG §5G1.2(d) would have required that the sentences run consecutively to the extent necessary to produce an aggregate period of incarceration equal to 151 months.  Third, it asserts that the proof of Duarte's complicity in distributing more than 1,000 kilograms of marijuana is so overwhelming that his substantial rights could not have been affected by sentencing him based on that quantity.  Because we find the government's third theory dispositive, we take no view of the validity vel non of its other theories.[4]

_____

[4]We note, however, that several courts have deemed the availability of consecutive sentences sufficient to defeat claims of plain error in the Apprendi context.  E.g., United States v. Smith, 240 F.3d 927, 930 (11th Cir. 2001) (per curiam) (finding no prejudice in concurrent thirty-year sentences that

-13-

We need not tarry. A guilty plea in a drug-trafficking case usually entails an admission anent the amount of drugs involved. For all intents and purposes, such an admission effectively resolves any doubts about drug quantity. In the ordinary case, we think that it will be difficult, if not impossible, for a defendant to show any cognizable prejudice in connection with a sentence based on a drug quantity that he has acknowledged, even though his sentence exceeds the statutory maximum for trafficking in unspecified amounts of those drugs.

This is such a case. As said, Duarte signed a plea agreement in which he unequivocally accepted responsibility for a specified amount of drugs (1,000 to 3,000 kilograms). This admission, which largely dictated the length of his sentence, took any issue about drug quantity out of the case. That being so, Duarte scarcely can claim to have been prejudiced either by

---

violated Apprendi where three twenty-year sentences could have been imposed consecutively); United States v. White, 238 F.3d 537, 542-43 (4th Cir. 2001) (holding that the defendant's substantial rights were not affected by what the court assumed was Apprendi error because, even if the sentencing court had limited the defendant's sentence on each count to the default statutory maximum, it would have been obliged under the sentencing guidelines to impose those sentences consecutively to reach the same aggregate span of incarceration); United States v. Page, 232 F.3d 536, 543-45 (6th Cir. 2000) (declining to notice unpreserved Apprendi error where defendants in any event would have been jailed for the same period through the imposition of consecutive sentences), cert. denied, ___ S. Ct. ___ (2001).

the omission of specific drug quantities from the body of the indictment or by the absence of a jury determination on the point.

Our conclusion that Duarte's substantial rights were not trammeled by the presumed _Apprendi_ error is bolstered by a combination of other factors. First, although the body of the indictment did not mention specific drug amounts, the notices appended to the indictment gave Duarte fair warning that the government believed he had dealt in large quantities of marijuana and that it might seek penalties beyond the five-year default statutory maximum on at least some of the marijuana counts. Second, the plea agreement set out the maximum penalties faced with regard to each of the thirteen counts of conviction. In every instance, these maxima exceeded five years. By like token, the plea agreement contained Duarte's acknowledgment that his admission of guilt exposed him to a life sentence on at least one of the marijuana-trafficking counts by reason of the large volume of drugs that had passed through his hands. Third, the record reveals that Duarte received a term of imprisonment (approximately twelve-and-one-half years) well under the maximum to which his own drug-quantity admission exposed him. _See_ 21 U.S.C. § 841(b)(1)(A) (providing for penalties up to life in prison for marijuana trafficking

-15-

involving 1,000 kilograms or more).  Taking these accouterments into account, the conclusion is irresistible that any Apprendi error did not prejudice Duarte.

A number of other courts have reached similar conclusions in analogous circumstances.  In United States v. Swatzie, 228 F.3d 1278 (11th Cir. 2000), the court assumed without deciding that the defendant could show Apprendi error in the imposition of a sentence of life imprisonment but determined that any error fell short of affecting his substantial rights. Id. at 1281-83.  The court based this determination on the fact that the defendant, after his arrest, led authorities to a hidden drug stash (which included more than twenty grams of cocaine base) and admitted that the drugs were his.  Id. at 1282.  Because there was no real doubt that the defendant, who had prior felony drug convictions, possessed at least the amount of cocaine base (five grams) needed to trigger a potential sentence of life imprisonment, see 21 U.S.C. § 841(b)(1)(B), the sentence survived plain-error review.  Swatzie, 228 F.3d at 1282-83.

So too United States v. Poulack, 236 F.3d 932 (8th Cir. 2001), a case in which the court upheld a 210-month sentence for marijuana trafficking, noting that the defendant had stipulated at trial to a drug quantity (seventy-seven kilograms) that

-16-

exposed him to a potential twenty-year sentence. Id. at 937-38. Remarking that the record afforded "no reason to believe that a jury would not have made the same finding of quantity as the district court did," the Eighth Circuit held that the Apprendi error had not affected the defendant's substantial rights. Id. at 938.

Finally, in a case very similar to the one at bar, the Eleventh Circuit conceded that the imposition of a thirty-year sentence for cocaine trafficking violated Apprendi but nonetheless refused to vacate it on plain-error review. Pease, 240 F.3d at 943-44. The court's ratio decidendi was that the defendant had admitted in a plea agreement to accepting delivery of a quantity of cocaine that exposed him to a maximum sentence of forty years. Id. at 944.

Duarte asserts that his case is identical to United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000), in which the district court sentenced the defendant to ten years for marijuana trafficking based on a judicial finding of drug quantity. Id. at 1057. A panel of the Ninth Circuit vacated the sentence, finding that it violated Apprendi because it exceeded the five-year statutory maximum for trafficking in an unspecified amount of marijuana. Id. at 1059 (citing 21 U.S.C. § 841(b)(1)(D)). But Nordby is readily distinguishable. There,

unlike in this case, the defendant consistently had disputed his responsibility for the marijuana plants which the sentencing court attributed to him.  See id. at 1060-61.  The appellate panel, believing that the defendant had generated a substantial doubt concerning his responsibility for the plants, found that the sentencing court's failure to submit the question of drug quantity to the jury prejudiced his substantial rights.  Id. at 1061.  That is a far cry from the situation that confronts us here.

To say more on this point would be supererogatory. Where an indictment in a drug-trafficking case fails to charge a specific quantity of drugs, the sentencing court fails to submit the question of drug quantity to the jury, and the defendant is sentenced to a term of immurement in excess of the default statutory maximum, there may well be Apprendi error. But any such bevue ordinarily will fail the multifaceted test for plain error so long as the issue of drug quantity was effectively resolved by the defendant's acknowledgment of responsibility for a definite amount of contraband sufficient to trigger the new statutory maximum. Because this is such a case, we come to the inexorable conclusion that, although an unpreserved Apprendi error may have occurred, it did not

adversely impact Duarte's substantial rights (and, therefore, does not warrant vacation of the challenged sentences).[5]

## III. CONCLUSION

In sum, Duarte invites us to vacate his concurrent sentences on the eleven marijuana-trafficking counts based on Apprendi error. We decline his invitation. After all, even if an Apprendi error occurred, the sentences that the court imposed were premised on a drug quantity about which Duarte had notice at the time of his indictment and to which he confessed at the time he entered his guilty plea. Hence, he suffered no cognizable harm.

We need go no further. "The plain error hurdle is high," United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989), and Duarte cannot vault it here.

**Affirmed.**

---

[5]Having reached this conclusion, we have no cause to proceed to the fourth prong of the plain-error test.