# United States Court of Appeals
## For the First Circuit

No. 15-2446

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL BRAMLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Jamesa J. Drake, with whom Drake Law, LLC was on brief, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

January 26, 2017

———————
   * Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**. This sentencing appeal requires us to explore the intersection between the right of a sentencing judge to receive confidential advice from probation officers and the right of a convicted defendant to know the nature of the information upon which he is sentenced and to challenge its relevancy and accuracy. Concluding, as we do, that the court below did not plainly err by engaging in brief, off-the-record conversations with a probation officer during the appellant's sentencing, we affirm.

## I. BACKGROUND

The relevant facts and travel of the case can be succinctly summarized. Defendant-appellant Daniel Bramley, a British national, came to the attention of federal authorities during a Drug Enforcement Administration (DEA) wiretap investigation into the operations of a drug-trafficking ring in and around Portland, Maine. The investigation revealed the ringleader to be one Robert Evon, and the DEA intercepted several communications between Evon and the appellant in mid-2013. Among other things, Evon requested that the appellant collect "paperwork" from a coconspirator. The appellant complied, retrieving a package that contained $25,000 in drug proceeds. He later accompanied Evon to Scarborough, Maine; obtained twenty pounds of marijuana; and peddled some of the marijuana in Vermont.

As its investigation progressed, the DEA obtained additional information from a cooperating witness (who turned out to be none other than Evon himself). Cf. William Shakespeare, The First Part of King Henry the Fourth act 2, sc. 2 (1597) ("A plague upon it when thieves cannot be true one to another!"). We highlight this additional information, mindful that the appellant disputes much of it.

- Roughly ten years earlier, Evon procured sizeable quantities of marijuana from the appellant on multiple occasions.

- In 2012, the appellant — acting as a middleman — connected Evon with a marijuana source in Staten Island, New York.

- Either the same year or the next year, the appellant arranged for Evon to obtain marijuana from yet another New York source.

- Evon and the appellant subsequently met this second supplier in San Francisco to acquire liquid LSD (which the two men planned to sell in Vermont and Maine).

The DEA investigation reached its climax in March of 2014. At that time, a federal grand jury sitting in the District of Maine indicted the appellant on charges of conspiracy to distribute and possess with intent to distribute marijuana, see 21 U.S.C. §§ 841(a)(1), 846; unlawful use of a communication facility,

see id. § 843(b); and related criminal forfeitures, see id. § 853. After initially maintaining his innocence, the appellant entered a guilty plea to the conspiracy count and, in the process, acknowledged the prosecution's written version of events as true. The other charges were dismissed.

The district court convened the disposition hearing on November 6, 2015. Although the presentence investigation report (the PSI Report) alleged that the appellant was responsible for 68.2 kilograms of marijuana and approximately 5,000 kilograms of marijuana equivalent (or fifty milliliters of liquid LSD, see USSG §2D1.1, cmt. n.8(D)), the appellant had not admitted to any specific drug quantities. Given the absence of any such admission, the sentencing court recognized — and the government agreed — that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), limited the maximum available sentence to sixty months,[1] see 21 U.S.C. § 841(b)(1)(D), notwithstanding that the guideline sentencing range would otherwise have been 135 to 168 months.

---

[1] Apprendi guarantees a defendant the right to a jury finding referable to each element or element-equivalent of the charged offense. See 530 U.S. at 477, 484-85. The same reasoning extends to facts admitted in a guilty plea. See United States v. Booker, 543 U.S. 220, 244 (2005) ("Any fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Consequently, the court below could not lawfully impose a sentence beyond the default statutory maximum of five years. See United States v. Jiminez, 498 F.3d 82, 87 (1st Cir. 2007).

The government argued for a sentence "near" the sixty-month maximum, reasoning that the appellant's brushes with the law were more extensive than his criminal history score suggested and that he appeared to be a professional marijuana trafficker. Among its supporting points, the government noted that the authorities had twice seized large sums of cash ($33,000 and $100,000, respectively) from the appellant in 2005.

Defense counsel rejoined that the appellant's past peccadillos were remote in time and that his current medical conditions (depression and diabetes) cried out for leniency. Counsel also cited the appellant's immigration status, arguing for a sentence of less than one year since a longer sentence could expose the appellant to deportation. See 8 U.S.C. § 1227(a)(2)(A)(i). The appellant himself added a series of denials: he denied selling LSD, introducing Evon to suppliers, and knowingly transporting drug proceeds.

The sentencing court voiced concern about the appellant's criminal history, particularly the unexplained chunks of cash that had been found in his possession. Although the appellant insisted that the cash came from lawful sources, the court remained skeptical. When pressed, the appellant acknowledged that at least some of the cash may have originated from marijuana sales.

The court continued the sentencing hearing to November 18 to allow the government an opportunity to rebut the appellant's attempt to limit his involvement with Evon. When the hearing resumed, the government offered wiretap records memorializing the appellant's communications with Evon. The records revealed that the appellant agreed to do Evon a favor by picking up "paperwork." A DEA agent testified that "paperwork" is a common code word for cash in drug-trafficking parlance and that the appellant and Evon used the term to refer to cash. Faced with this evidence, the appellant backtracked: he admitted that he "suspected [the 'paperwork'] was something not legit" and knew that the package contained cash when he retrieved it.

The DEA agent also described text messages between Evon and the appellant in which the two men discussed plans to sell "blue bottles" at a forthcoming concert. The agent testified that the DEA later seized the blue bottles and found them to contain liquid LSD. Confronted with this testimony, the appellant insisted that he only purchased LSD from Evon for personal use, not for resale; but the court remained dubious given the quantity of LSD involved and the appellant's text message to Evon stating "I have blue bottles gone."

Toward the end of the resumed hearing, the judge took a short recess and engaged in an off-the-record conversation with the probation officer. This break in the action — to which the

appellant did not object — lasted approximately five minutes. Immediately thereafter, the court asked the parties to address the government's contention that the appellant should be denied any credit for acceptance of responsibility. See USSG §3E1.1(a). The court told defense counsel that it did not "want to even consider doing something unless you get an opportunity to address it." Following arguments on this point, the court found that the appellant had lied deliberately on at least two occasions during the sentencing phase (about knowingly transporting drug proceeds and about conspiring to sell LSD). Based on this discerned prevarication, the court proceeded to find that the appellant had not accepted responsibility and sentenced him to a fifty-month term of immurement.

Before the imposition of sentence was completed, a second off-the-record conversation took place between the court and the probation officer. This conversation, which lasted a mere ten seconds at sidebar, occurred while the court was considering the monetary increments of the sentence. Once again, the appellant did not object to the pause. In the end, the court imposed the mandatory $100 special assessment, see 18 U.S.C. § 3013(a)(2)(A), and waived any fine.

This timely appeal followed.

## II.  ANALYSIS

This is a rifle-shot appeal, in which the appellant (represented by new counsel) advances only a single claim of error. He challenges the district court's actions in conversing off the record with the probation officer during sentencing without ever apprising him of the substance of those conversations.  Because the appellant interposed no contemporaneous objections to these conversations, our review is for plain error.  See United States v. Mehanna, 735 F.3d 32, 52 (1st Cir. 2013); see also Fed. R. Crim. P. 52(b).

As we have made pellucid, "[t]he plain error hurdle is high."  United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989).  Review for plain error "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  The proponent of plain error must carry the devoir of persuasion as to each of the four elements that collectively comprise the plain error standard.  See United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006); United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005).  Given the rigors of this standard, a reviewing court's power to set aside trial court decisions due to plain error "should be employed

- 8 -

sparingly." United States v. Padilla, 415 F.3d 211, 221 (1st Cir. 2005) (en banc); see United States v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995).

The first two elements of the plain error standard, read together, require us to determine whether the district court committed a clear and obvious error when it engaged in ex parte conversations with the probation officer during sentencing. We begin with first principles: neither the Sixth Amendment right of confrontation nor the Federal Rules of Evidence apply during the sentencing phase of a federal criminal proceeding. See United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003). As a result, a district court enjoys considerable discretion in determining what information it will consider at sentencing. See id.

Though wide, this discretion is bounded by both Federal Rule of Criminal Procedure 32 and the demands of due process. These strictures require, at a minimum, that "a defendant . . . be sentenced upon information which is not false or materially incorrect." United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991); see United States v. Kenney, 756 F.3d 36, 49 (1st Cir. 2014); United States v. Berzon, 941 F.2d 8, 18 (1st Cir. 1991). Rule 32 directs the probation office to prepare a PSI Report — a report that must be compiled with an eye toward due process. See Fed. R. Crim. P. 32(c)(1)(A); Curran, 926 F.2d at 61. PSI Reports must be made available to the parties, and the parties must be

given the opportunity to object to their contents. See Fed. R. Crim. P. 32(e)-(f). In a similar vein, the sentencing guidelines stipulate that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." USSG §6A1.3(a). More broadly, we have recognized that "a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based." Berzon, 941 F.2d at 10.

In light of this legal framework, it is unsurprising that our precedents are protective of a defendant's right to disclosure of the information affecting a sentencing court's decisional calculus. See, e.g., Curran, 926 F.2d at 63 (holding that "a sentencing court, whenever it considers documents to which Rule 32 does not apply, should either make clear that the document is not being used for its factual content, or should disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it"). While a defendant is not entitled to every scrap of information that may be relevant to his sentence, see, e.g., Fed. R. Crim. P. 32(d)(3) (directing probation officers to exclude certain information from PSI Reports, such as sources of confidential information and "information that, if disclosed, might result in physical or other harm to the defendant or

others"), we have expressed disapproval in several situations in which the sentencing court did not give the defendant an adequate opportunity to challenge the evidence against him. See, e.g., United States v. Zavala-Martí, 715 F.3d 44, 48-49, 55-56 (1st Cir. 2013) (finding sentencing process "inadequate" when district court was briefed ex parte by a probation officer — though not the probation officer assigned to defendant's case — about defendant's alleged attempts at intimidation); United States v. Craven, 239 F.3d 91, 101-03 (1st Cir. 2001) (remanding for resentencing where district court improperly relied on hour-long ex parte conversation with court-appointed psychologist); Berzon, 941 F.2d at 20-21 (remanding for explanation as to whether sentencing judge had relied on testimony, unknown to defendant, emanating from a different defendant's case).

Withal, a sentencing court's communications with the probation officer are fundamentally different from its communications with third parties. A probation officer is simply an extension of the court itself, cf. 18 U.S.C. § 3602(a) (authorizing district courts to appoint probation officers), and "functions as an arm of the court," United States v. Saxena, 229 F.3d 1, 5 n.1 (1st Cir. 2000).

This distinction underpinned our reasoning in United States v. Fraza, 106 F.3d 1050, 1055-56 (1st Cir. 1997). There, we found no error in a probation officer's interruption of a

sentencing hearing in order to converse ex parte with the court. See id. We observed that the probation officer's duty is to supply the "judge with as much information as possible in order to enable the judge to make an informed decision." Id. at 1056 (quoting United States v. Belgard, 894 F.2d 1092, 1097 (9th Cir. 1990)). The holding in Fraza is consistent with Rule 32 itself, which authorizes certain confidential communications between the probation officer and the sentencing court. See Fed. R. Crim. P. 32(e)(3). It is also consistent with the case law. See, e.g., United States v. Stanphill, 146 F.3d 1221, 1224 n.1 (10th Cir. 1998) (noting that ex parte communication between the court and the "probation officer responsible for sentencing recommendations is not improper per se").

This does not mean, though, that probation officers and sentencing judges have a free pass to discuss everything and anything off the record. To the contrary, factual information relevant to sentencing must be disclosed to the defendant. See United States v. Gonzales, 765 F.2d 1393, 1398 (9th Cir. 1985). That principle is illustrated by the decision in United States v. Christman, where the court vacated the defendant's sentence because the sentencing judge had relied on ex parte communications with probation and pretrial services officers conveying new information, specifically, their belief that the "defendant had

acted on his pedophilia and in fact had molested children." 509 F.3d 299, 300-01 (6th Cir. 2007).

This distinction — between new facts, on the one hand, and advice, on the other hand — is consistent with our reasoning in Craven. The psychologist's opinion there, communicated off the record to the court and not disclosed to the defendant, was at a far remove from sentencing advice provided by a probation officer. Because the psychologist was supplying the court with new information, we held that the psychologist's findings should have been disclosed to the parties and subjected to their examination. See Craven, 239 F.3d at 101 (holding that "a sentencing court may not utilize an ex parte conversation with a court-appointed expert as a means to acquire information critical to a sentencing determination and then rely on that information in fashioning the defendant's sentence").

The short of it is that a sentencing court has the right to confer ex parte with a probation officer to seek advice or analysis — but if the probation officer reveals new facts relevant to the sentencing calculus, those facts cannot be relied upon by the sentencing court unless and until they are disclosed to the parties and subjected to whatever adversarial testing may be appropriate.

In the case at hand, the contents of the conversations are unknown — and that circumstance is the direct result of the

appellant's failure to object.  At any rate, nothing in the record suggests that those conversations imported new facts into the sentencing calculus.  Thus, we cannot say that an error occurred. What we can say, however, is that the existence of error was neither clear nor obvious.  Given that the appellant must carry the burden of showing a clear and obvious error, see Turbides-Leonardo, 468 F.3d at 39, his claim fails under the first two elements of plain error review.

In all events, the fact that the record does not reliably suggest the contents of the ex parte conversations defeats the appellant's claim at the third step of the analysis.  This step requires that the claimed error must be shown to have affected the appellant's substantial rights.  See Duarte, 246 F.3d at 60. Typically, this means that "the error must have been prejudicial" such that it "affected the outcome of the district court proceedings."  United States v. Olano, 507 U.S. 725, 734 (1993). In other words, the appellant must show a reasonable probability that, but for the error, the outcome would have been different. See Padilla, 415 F.3d at 220-21.  Such a showing demands some level of certainty and particularity.  See Jones v. United States, 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.").

- 14 -

Here, the appellant has not shown a reasonable probability that the outcome of his sentencing proceeding would have been different but for the two off-the-record conversations between the sentencing judge and the probation officer.  On this empty record, there is simply no basis for concluding that the conversations involved new facts or raised new matters.  While the appellant repeatedly urges us to consider the possibility that the probation officer's discussions with the sentencing judge may have been improper and prejudicial, that would entail a fruitless exercise in speculation and surmise.  Where, as here, an appellant forgoes a timely objection that would have shed light on the nature of the conversations, he is in a woefully weak position to insist that we indulge in such speculation.

We add, moreover, that what indications there are in the record point in a contrary direction: the longer of the challenged conversations[2] seems likely to have dealt with acceptance of responsibility (a matter fully aired at the sentencing hearing); and the sentencing judge, immediately after this conversation,

---

[2] We focus on the longer conversation because, as a practical matter, the shorter of the two off-the-record conversations is virtually irrelevant.  It lasted a mere ten seconds, and it took place after the court already had imposed the fifty-month sentence.  The conversation preceded only the imposition of the special assessment (which was mandatory, see 18 U.S.C. § 3013(a)(2)(A)) and the decision not to impose a fine (which was favorable to the appellant).  Seen in this light, the second conversation could not, by any stretch of even the most fertile imagination, have affected the appellant's substantial rights.

made clear that he did not "want to even consider doing something unless [defense counsel] get[s] an opportunity to address it." The fact that the judge took pains to enumerate the materials upon which he was basing his decision also argues against an assumption that the probation officer gave him new, undisclosed information. The judge specifically mentioned the PSI Report, the submitted evidence, letters received and placed on file, statements from counsel, and the appellant's allocution. This recitation strongly suggests that the judge was aware of the appellant's right to be informed about facts and arguments that might impact his sentence and did not base his sentencing decision on subterranean facts.

If more is needed — and we doubt that it is — nothing about the challenged sentence in any way indicates a hidden agenda. The sentence itself is below what the government requested and is amply justified by fully disclosed facts, including the appellant's extensive involvement in marijuana-trafficking activities and his repeated shading of the truth during the sentencing proceeding. On this record, there is simply no way in which the challenged conversations, bereft as they are of any semblance of certainty or particularity because their content is wholly unknown, can plausibly be found to have affected the appellant's substantial rights. See Jones, 527 U.S. at 394-95; see also Padilla, 415 F.3d at 221 (noting that it was "nearly

impossible" to find prejudice from alleged delegation error without having to compare "two unknown variables").

For the sake of completeness, we comment briefly on the last element of the plain error analysis: whether the error (if one existed) "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. Because a probation officer is an extension of the sentencing court itself and the court is allowed to consult the officer off the record for many purposes and in many circumstances, brief ex parte conversations such as the ones that transpired here, unaccompanied by any showing of prejudice, cannot fairly be said to sully the public perception of judicial proceedings. Cf. Fraza, 106 F.3d at 1056 (noting expectation that probation officer will "exercise his independent judgment as to the application of the guidelines" and finding no error in ex parte discussions between judge and probation officer during sentencing hearing). Consequently, the appellant has not satisfied his burden with respect to the last element of the plain error standard.

We need go no further. In this case, all roads lead to Rome. The appellant's sole claim of error engenders plain error review, and that standard presents a high hurdle that the appellant cannot vault. His claim fails to demonstrate any of the four elements needed for a finding of plain error.

**Affirmed.**