**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1188

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN C. SLATER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

William S. Maddox on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, and
Thomas E. Delahanty II, United States Attorney, on brief for
appellee.

June 2, 2017

**KAYATTA**, <u>Circuit Judge</u>.  This sentencing appeal presents two issues:  (1) whether the district court plainly erred by considering a victim-impact statement that the defendant claims he was not able to review prior to sentencing; and (2) whether the defendant's sentence was procedurally or substantively unreasonable.  Because the defendant has failed to show how he was prejudiced by any delay he may have experienced in receiving the victim-impact statement, and because the district court appears to have adequately considered and explained the relevant factors that led it to impose a within-guidelines sentence, we affirm the district court.

**I.**

The facts of this case are drawn from the revised presentence investigation report ("PSI Report") and are not in dispute.  On June 23, 2014, local police officers responded to a bank robbery at a Bank of Maine branch in Hallowell, Maine.  The officers' investigation revealed that a male customer had entered the branch and told a teller that he was interested in opening an account.  After the teller led the customer into an office to begin the account-opening process, the customer handed the teller a note that stated the following:

> Im [sic] Here to <u>Rob</u> your Bank, no <u>Silent</u> <u>Alarms</u> my cell phone rings, your [sic] all dead, I have a hand grenade, and a gun, no marked bills, or inked, if so, one day I will

- 2 -

come back and kill all of you, do you understand???

The man then told the teller, "I'm sick. I want $15,000. I don't care, I'll shoot. Now you didn't set off the alarm? If you did, my phone will go off." The teller thereafter left the office, told the branch manager what was happening, and the two employees retrieved $15,000 in brand new $100 bills, which they gave to the man.

Within a matter of days, and with the public's help, the man was identified as defendant John Slater. The execution of warrants for two residences listed under Slater's name yielded a number of incriminating items, including some of the clothes that the man wore on the day of the robbery, stationery that matched the note that the man provided the teller, a Bank of Maine cash bag, and a partially used box of ammunition. On July 9, 2014, law enforcement agents located and arrested Slater at a motel in Twin Mountain, New Hampshire. Before the agents were able to advise him of his Miranda rights, Slater asked them how they had found him and stated that he "knew [he] shouldn't have done it." The agents recovered $2592 in cash as well as a gun that matched the ammunition box discovered at one of Slater's residences. Slater did not have a permit to possess the gun, which he had purchased through a private sale.

After waiving his <u>Miranda</u> rights, Slater admitted to the robbery and revealed various details not only about the robbery but also about his activities after the fact. Slater also stated that although he did not know why he had robbed the bank, he had not taken his medication for bipolar disorder as prescribed. Slater further claimed that he regretted committing the robbery and that he was planning on turning himself into the police the following day.

On October 28, 2016, Slater pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). Pursuant to the United States Sentencing Guidelines Manual ("Guidelines Manual"), the PSI Report calculated a total offense level of twenty-five and a criminal history score of twelve, which corresponded with an advisory guidelines range of 100 to 125 months' imprisonment. Slater's criminal history score--which placed him in criminal history category V--was based on a string of criminal convictions, with the most recent conviction occurring in 2009. The district court later "calculated that the total amount of time the defendant has been sentenced since age 18 is over 63 years," although "[m]uch . . . of that time . . . involved sentences that were suspended."

Slater's initial sentencing memorandum requested a below-guidelines sentence based on "his early acceptance of responsibility" as well as his "age, health, and military service."

In support of his request, Slater noted that he was sixty-six years old at the time of the robbery; that he suffered from "Parkinson's disease, PTSD, anxiety, depression and left arm paralysis, arthritis, as well as [a] lesion on his nose"; and that he suffered from "PTSD, anxiety and depression as a consequence of his [military] service" in Vietnam. Slater's subsequent reply memorandum specifically requested a sentence of forty-eight months' imprisonment, and further noted that a soon-to-be adopted amendment to the Guidelines Manual lowered the relevant guidelines range to ninety-two to 115 months' imprisonment.

The government's sentencing memorandum requested a sentence at or near the top of the guidelines range, followed by a three-year term of supervised release. The government noted the nature and seriousness of Slater's offense and drew upon a "victim impact statement that has been submitted to the court" to suggest that the robbery "was a terrifying event for bank employees." After pointing to Slater's "long and serious criminal history," the government responded to Slater's request for a below-guidelines sentence based on his age by arguing that "[h]is criminal conduct has spanned most of his life unaffected by age or lengthy prison sentences," and therefore, that "[t]here is no reason to believe that his age has or will deter his criminal conduct and his age does not distinguish his case in a meaningful way from the typical case." The government further argued that

Slater's "[mental] conditions are serious but . . . not extraordinary," and that there "is nothing to suggest that they played any role in the instant offense or that treatment of those conditions cannot be achieved in a Bureau of Prisons facility." The government also downplayed the significance of Slater's "commendable" military service, insofar as "[t]he honor that the defendant showed in his military service is notably absent from his long history of criminal conduct."

On January 29, 2016, the district court--using the advisory guidelines range of ninety-two to 115 months--sentenced Slater to 115 months of imprisonment to be followed by a three-year term of supervised release. The grounds on which the district court based that sentence, as well as the manner in which it was imposed, form the basis of this appeal.

## II.

"[A] sentencing court, whenever it considers documents to which Rule 32 [of the Federal Rules of Criminal Procedure] does not apply, should . . . disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it." United States v. Curran, 926 F.2d 59, 63 (1st Cir. 1991). Here, the court indisputably relied upon the victim-impact statement submitted by the bank teller: during sentencing, the government referred to the statement at some length, and the district court expressly

referred to the "trauma" experienced by the bank teller in imposing its sentence. Thus, the question is whether Slater received the statement "in a timely manner, so as to afford [him] a fair opportunity to examine and challenge it." Id. However, because Slater failed to object to the admission of the teller's statement or to the government's and district court's repeated references to that statement, Slater and the government agree that this court's review is for plain error only. See United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017); see also Fed. R. Crim. P. 52(b).

Slater contends that he did not receive the bank teller's statement until just prior to sentencing. The sentencing hearing transcript indicates that both the bank teller's statement, as well as a statement from the bank, were in fact not entered into the record until sentencing, although "the court . . . received and reviewed the victim statements" at some point prior to the hearing. Slater himself stated at the hearing that he had "just read" the teller's statement, and on appeal he claims that the relevant certificate of service indicates that he did not receive the statement until the day before sentencing.

The government contends that "the precise date on which Slater was given the teller's victim impact statement is unclear," but that "the record suggests that it was well in advance of sentencing." In support of its position, the government points to the fact that the PSI Report notes that "one Victim Impact

Statement has been received," and further, that "[t]he one statement, as well as receipt of any additional statements or restitution requests will be forwarded to the Court and counsel prior to sentencing." The government also notes that its sentencing memorandum provides the following: "The robbery and the fear that the defendant was at large caused considerable apprehension to the victims of the robbery. It is clear from the victim impact statement that has been submitted to the court that this was a terrifying event for bank employees." Slater's sentencing memoranda neither challenge nor mention any part of this assertion or the teller's impact statement.

The problem for Slater is that even if we agree that he did not receive the victim-impact statement until sentencing, we do not see how this delay caused him prejudice. Nor does Slater allege any procedural or substantive grounds on which he would have challenged the statement's admission or the district court's reliance on the statement. See Bramley, 847 F.3d at 7 ("[T]he appellant must show a reasonable probability that, but for the error, the outcome would have been different [in order to satisfy the plain error standard]. Such a showing demands some level of certainty and particularity." (citation omitted)). Accordingly, Slater's challenge to the district court's reliance on the victim-impact statement does not survive plain error review.

## III.

Slater next challenges his sentence as procedurally and substantively unreasonable.  Slater's procedural challenge alleges that the district court erred by failing to "adequately explain the chosen sentence in view of [Slater's] request for a downward departure based on defendant's age, physical condition, emotional condition and military service."  Although we would normally review this challenge for abuse of discretion, see United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010), Slater's failure to raise any such challenge below limits our review to plain error, id.

To be sure, "[t]ransparency is an important virtue in the sentencing realm, and we do not lightly countenance a district court's failure to provide a coherent explanation of its sentencing rationale as required by 18 U.S.C. § 3553(c)."  United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir. 2015).  However, as we have previously suggested, "a within-the-range sentence usually demands a less detailed explanation than a variant sentence."  Id. at 227 (quoting United States v. Ocasio-Cancel, 727 F.3d 85, 91 (1st Cir. 2013)).  And even the failure of a court to "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), is not "in and of itself . . . plain error," Ruiz-Huertas, 792 F.3d at 227.

Here, the district court expressly noted at sentencing that it had "read the memoranda that counsel ha[d] submitted" and yet did not think that Slater "qualifie[d] for any downward departures under the guidelines" because it "d[idn't] think they're applicable in his particular case."  The court also made ample and specific references to Slater's age, physical condition, emotional condition, and military service throughout the course of the sentencing hearing:  The court not only stated Slater's age at the outset of sentencing, but also noted that Slater seemed unable to "age-out of crime" insofar as he "committed the worst crime of [his] life in [his] late . . . 60s" and that "it's really past time for [him] to figure out what it is that's causing [him] to be so violative of the law."  The court acknowledged Slater's various health conditions, and recommended that he "be placed in a Bureau of Prisons facility that can address his medical needs" and that he seek counseling.  The court also made repeated references to Slater's military service, including noting that the court "can sympathize with [Slater] as being . . . a veteran of the Marine Corps and a veteran of the hard and very traumatic fight that this nation had in Vietnam," which Slater was "in the thick of."  In fact, the court noted that it was especially "bother[ed]" by the nature of Slater's conduct because his experience in the military apprised him of the "terrible . . . psychological trauma" that his conduct caused the bank teller.  Clearly, then, the court expressly

considered Slater's age, health conditions, and military service in sentencing him.

The court otherwise explained its reasons for imposing its sentence. As evidenced by Slater's challenge to the victim-impact statement, the court emphasized the "terror" and "hurt" that Slater caused the bank teller. The court also noted Slater's lengthy criminal history--which it described as Slater's "most striking feature"--and his seeming inability to change his behavior. And just prior to announcing Slater's sentence, the court stated that it "d[idn't] like imposing this sentence," but determined that the sentence was necessary "to protect the public." At bottom, then, this case does not present a situation in which the district court was cursory or inattentive in imposing its sentence; rather, the record reflects a district court that specifically and expressly addressed the various factors that informed its decision. Thus, Slater's challenge to the procedural reasonableness of his within-guidelines sentence must fail.

For similar reasons, we can find no substantive error in the district court's sentence. Though it appears to be an unsettled question of law whether Slater's failure to object to the substantive reasonableness of his sentence below limits the scope of the panel's review to plain error, see United States v. Rivera-Clemente, 813 F.3d 43, 53 (1st Cir. 2016) (citing Ruiz-Huertas, 792 F.3d at 228), even under an abuse of discretion

- 11 -

standard, Slater's sentence was not substantively unreasonable. In choosing to remain within the relevant guidelines range, it was not unreasonable for the court to have weighed the nature of Slater's crime and his lengthy criminal history against those factors arguably cutting in Slater's favor, such as his age, health conditions, and military service. Nor was it unreasonable for the court to have concluded that Slater's criminal history suggested that his likelihood of recidivism was high despite his relatively advanced age. Accordingly, the district court did not abuse its discretion in sentencing Slater to 115 months of imprisonment.

## IV.

For the foregoing reasons, we _affirm_ the sentence imposed by the district court.