SELYA, Circuit Judge, dissenting. Picture this: a district judge, charging the jury in a complex criminal case, reads his prepared (written) instructions to the jury. While doing so, he twice ad-libs remarks that are legally incorrect and run counter to the correct instructions both read to the jurors and provided to them in writing. The defendant’s counsel, as well as counsel for a separately represented eode-fendant, are apparently unconcerned; neither lawyer interposes an objection. The jury deliberates and returns a split verdict, convicting the defendant on a charge of RICO conspiracy, but acquitting him on the other charges. On appeal, the defendant is represented by new counsel, who, after scouring the record, argues that the judge’s ad-libbed remarks demand vacation of the conviction. The majority acknowledges (as it must) that this claim was not preserved below and can be reviewed only for plain error. It nonetheless holds that—due to two errant phrases ad-libbed by the district judge—the conviction should be set aside. This holding blurs the vital distinction between appellate review of preserved claims of error and appellate review of unpreserved claims of error. To make matters worse, the majority overlooks and/or undervalues telltales that argue powerfully against the existence of a reasonable probability that the district judge’s ad-libbed remarks were outcome-determinative. In my view, the appropriate standard of review, applied as precedent dictates, requires us to reject this unpreserved claim of error. Because the majority reaches a contrary result only by diluting the plain error standard, I respectfully dissent. The plain error standard' itself is not controversial: it requires the party advancing an unpreserved claim to establish “(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant’s substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.” United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Equally uncontroversial is the proposition that the proponent of an unpreserved claim (here, the defendant) must carry the devoir of persuasion as to each of these four elements. See United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017); United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005). In this case, the district judge, when instructing the jury in open court, twice ad-libbed remarks that included “firearms”, in his description of “racketeering activities” that might comprise a “pattern of racketeering activity.” The government concedes that these ad-libbed remarks were manifestly incorrect and, thus, satisfy the first two elements of the plain error standard. This appeal turns, then, on the third element: whether the defendant has carried his burden of demonstrating that the judge’s bevue “affected the defendant’s substantial rights.” Duarte, 246 F.3d at 60. To accomplish this task, the defendant must show, at a minimum, a reasonable probability that, but for the alleged error, the outcome of the trial would have been different. See Bramley, 847 F.3d at 7. This is a daunting'standard, requiring the'defendant to show “some level of certainty and particularity!;,]” and we. consistently have declined invitations to “indulge in ... speculation” on plain error review. W. at 7-8 (citing Jones v. United States, 527 U.S. 373, 394-95, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999)). It is not enough that there might be a possibility—even a strong possibility—that the jury was confused by a contested instruction; rather, for a reviewing court to find plain error, there must be a reasonable probability that, but for the instruction, the jury would not have convicted the defendant. In the case at hand, one important integer in the “reasonable probability” calculus is that the judge, on several other occasions during the delivery of his charge, correctly described the activities that might comprise a “pattern of racketeering activity.” Far from “notably insist[ing]” on the erroneous instruction, ante at 310, the judge excluded the term “firearms" from the relevant taxonomy every other time that he explained “racketeering activity”— and he did so consistently in the written instructions given to the jury. Where, as here, a judge gives conflicting versions of an element of an offense—one correct, one not—it is virtually impossible to say, to a reasonable degree of probability, that the jury went down one road rather , than the other. See, e.g., United States v. Pennue, 770 F.3d 985, 989-91 (1st Cir. 2014); cf. Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam) (concluding that - state court did not “unreasonably apply federal law when it found that there was no reasonable likelihood [a] jury was misled” by erroneous instruction when other correct instructions were also given). The cases in which appellate courts have set aside convictions based on unpreserved claims of non-structural instructional error are hen’s-teeth rare. Tellingly, the majority does'not cite a single decision in which we—or any other court, for that matter— have set aside a conviction, on plain error review, when a trial judge has given an undeniably correct instruction but intermingled it with' an incorrect instruction on the same point. Cf. Pennue, 770 F.3d at 989 (finding that appellant failed to show that a different result was “reasonably likely” when court gave both erroneous and correct reasonable doubt instructions); United States v. Rodríguez, 735 F.3d 1, 11-12 (1st Cir. 2013) (finding that appellant failed to show “reasonable probability” of different result when verdict form erroneously contradicted judge’s presumption of innocence instruction). As we made clear in Rodríguez, 735 F.3d at 12, materials instructing the jury “must be read in conjunction with one another.” The majority’s failure to cite any case on point is not for lack- of trying. Yet, the closest the majority comes to exhuming such a case is United States v. Delgado-Marrero, 744 F.3d 167 (1st Cir. 2014), That casé, though, is readily distinguishable. There, the judge failed to instruct the jury, in a special verdict form, that its findings on drug quantity had to be made beyond a reasonable doubt. -Id. at 186. The error was patent, and the only curative language to which the government could point was that the district court had told the jury that its deliberations “would be under the same terms and conditions” as the other elements of the offense. Id. (internal quotation marks omitted). Such oblique, language is not even faintly comparable to the detailed and correct explanations of “racketeering activity” provided by the district judge at numerous points throughout the trial in this case. So, too, the majority’s effort to conjure up a “reasonable probability” of a different result by reading the available tea leaves is unpersuasive. This effort turns a blind eye to the strength of the government’s' case. Moreover, it either ignores or undervalues a number of other salient considerations. I offer a representative sampling: The district judge sent into ■ the jury room copies of both his prepared (written) instructions and the indictment. He advised the jurors, before delivering his oral instructions, that they would have in the jury room copies of these documents, which would be available for their reference in case of doubt. • The district judge sent into the jury room copies of both his prepared (written) instructions and the indictment. He advised the jurors, before delivering his oral instructions, that they would have in the jury room copies of these documents, which would be available for their reference in case of doubt. Importantly, the judge made a trenchant observation: he warned the jury, that “[i]t is impossible for anyone to be able to recollect all those principles of law out of one reading by somebody. You need to have it in black and white so you can use it as a reference during your deliberations.” Both the written set of instructions and the indictment " correctly described the nature of the “racketeering activities” that might comprise a proscribed “pattern of racketeering activity.” Neither document was infected by the misstatements that marred the judge’s ad-libbed remarks. Given these facts, . common sense suggests that, if any confusion existed, the jurors would heed the judge’s warning and look, to the written instructions. ■ • The record makes manifest that the parties focused at trial on the correct components, of a “pattern of racketeering activity.” The prosecutor— both in his .opening statement and in his summation—stressed that the relevant racketeering predicates consisted of drug-trafficking and robbery-offenses that unquestionably fell within the proper purview of a “pattern of racketeering activity.” Nothing in defense counsel’s opening statement or final argument suggested anything to the contrary. Courts " have recognized that the way in which parties pitch their arguments to a jury may have decretory significance in determining the existence ‘ vel non of plain error. See, e.g., United States v. Gaviria, 116 F.3d 1498, 1611 (D.C. Cir. 1997) (giving weight to fact that defense and prosecution both had accurately described government’s burden'to the jury as evidence'that incorrect'instruction on the same point was not plain error). • The jury acquitted the defendant on the firearms conspiracy charge under 18 U.S.C. §§ 924(c)(1)(A)' and 924(o). Because these'were the' only firearms .offenses, the, elements of which were; presented to the jury, this acquittal further supports the fact that the racketeering activities for which .the jury found the defendant culpable wére the racketeering activities actually proscribed under 18 U.S.C. § 1962, not the firearm-focused activities arguably suggested by the flawed instructions. To say more would be to paint the lily. On this scumbled record, it is sheer, guesswork to speculate what effect, if .any, the judge’s ad-libbed remarks had on the jury's resolution of the RICO conspiracy count. And guesswork, of course, is an insufficient basis on which to ground a finding of a reasonable probability that an unpreserved error altered the outcome of a case. See Bramley, 847 F.3d at 7. After all, where the impact of an' alleged error is unclear, it should be an a fortiori proposition that “a defendant cannot meet his burden of showing that the error actually affected his substantial rights.” Jones, 527 U.S. at 394-95, 119 S.Ct. 2090. We long have recognized that “the plain error hurdle is high.” United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). Such a hurdle is not merely a procedural frill; rather, it plays a vital role in our multi-tiered system of justice. As the Supreme Court has explained, timely and specific objections “enable a trial court to correct any ... mistakes before the jury retires” and, thus, to avoid the significant costs “of an unnecessary retrial.” Jones, 527 U.S. at 387-88, 119 S.Ct. 2090. And this hurdle, “high in all events, nowhere looms larger than, in the context of alleged instructional errors.” United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001). The majority’s approach shrinks this traditional hurdle so drastically that it becomes no hurdle at all. The crux of the problem in this case is that the majority gives this burden nothing more than lip service—and grudging lip service at that. It is not the government’s job -to rule out any possibility that the jury was confused by the erroneous instruction. That would put the shoe on the wrong foot. Instead, it is the defendant’s job to carry the burden of affirmatively demonstrating a reasonable probability that, but for the error, he would not have been convicted. Speculating about possibilities does little to show that the defendant succeeded in hoisting that burden here. I believe that a proper application of the plain error doctrine vitiates the claim of error that the majority finds dispositive and that the defendant’s remaining claims of error are impuissant. Consequently, the defendant’s conviction should be affirmed. Because I fear that the majority, in reaching a different result, not only is wrong but also is reducing the difference between review of preserved and unpreserved claims of error to the vanishing point, Í respectfully dissent.