# United States Court of Appeals
## For the First Circuit

No. 07-2604

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. RICCIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, Senior U.S. District Judge]

Before

Howard, Circuit Judge,
Stahl, Senior Circuit Judge,
and Besosa, District Judge.*

Kathleen J. Hill for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief, for appellee.

June 17, 2008

---

*Of the District of Puerto Rico, sitting by designation.

**Besosa, <u>District Judge</u>**.   Appellant John L. Riccio was convicted of violating 18 U.S.C. § 1001 by submitting a false statement on a background check form (SF-86) to his former employer, the Transportation Security Administration (TSA).   On appeal, Mr. Riccio argues (1) that the district court abused its discretion in denying a motion for mistrial based on the government's "prosecutorial misstatements" during the trial; (2) that the Court erred in instructing the jury on the intent element of § 1001; (3) that the Court erred in considering, at sentencing, Mr. Riccio's sworn and counseled deposition testimony given in a suit he had filed against a previous employer, Wal-Mart, and (4) that the Court erred in ordering mental health counseling as a condition of his supervised release.   We affirm.

## I.   FACTUAL BACKGROUND

Mr. Riccio worked at a Wal-Mart store in Rhode Island from December 9, 2003 through February 3, 2004 as a sales clerk.   On February 3, 2004, he claimed he could no longer work due to a job-related back injury and began collecting workers' compensation. Mr. Riccio continued to collect disability payments from Wal-Mart until October 2005.   He was terminated from that employment on May 5, 2006.[1]

---

[1] Mr. Riccio's disability claim led to litigation with Wal-Mart which began in October 2005 and continued through February 2007.

In July 2004, while collecting disability payments from Wal-Mart, Mr. Riccio began employment as a screener with the TSA. He was stationed at T.F. Green Airport in Warwick. As part of this job, he had to stand for long periods of time and move heavy bags.

In December 2005, Mr. Riccio filed a disability claim with the TSA alleging he had been injured while on the job at the airport. As part of his TSA employment, Mr. Riccio completed a SF-86 background check form titled "Questionnaire for National Security Positions". On June 19, 2006, Mr. Riccio faxed the completed and signed SF-86 Form to a TSA official who had requested it. He attached to the form a signed cover letter in which he noted that he had submitted previous SF-86 forms.

In section 11 of the form, Mr. Riccio was required to list all of his employment going back several years, whether full-time or part-time, including any "paid work".[2] Just above the block where Mr. Riccio's signature appears, the SF-86 Form included a warning that false statements in the form could be punished by

---

[2] Section 11 of the SF-86 Form provides, in its pertinent part, as follows: "YOUR EMPLOYMENT ACTIVITIES. List your employment activities, beginning with the present (#1) and working back 7 years. You should list all full-time work, part-time work, military service, temporary military duty locations over 90 days, self-employment, other paid work, and all periods of unemployment. The entire 7-year period must be accounted for without breaks, but you need not list employments before your 18th birthday. EXCEPTION: Show all Federal civilian service, whether it occurred within the last 7 years or not."

imprisonment.[3]   Mr. Riccio made no reference to his Wal-Mart employment, however, when he completed the SF-86 Form.  Mr. Riccio was suspended from his TSA employment in October 2006.

On January 24, 2007, a one count indictment was returned by a grand jury charging Mr. Riccio with a violation of 18 U.S.C. § 1001, by knowingly and willfully making a materially false, fictitious or fraudulent statement on a document he submitted to the TSA, the SF-86 Form in which he did not list his Wal-Mart employment.  Mr. Riccio elected to represent himself at trial; a standby counsel was appointed by the court.

## A.    The government's closing argument

During its closing argument, the government argued that Mr. Riccio's statement that he had simply forgotten about his Wal-Mart employment while completing the SF-86 Form was farfetched because he was engaged in the Wal-Mart litigation at that very time.  The prosecutor suggested a double motive for Mr. Riccio's failure:  he did not want the TSA to learn of his earlier Wal-Mart employment, and conversely, he did not want Wal-Mart to discover that he was working for the TSA (because this might jeopardize his disability suit).  Mr. Riccio did not object to the prosecutor's suggestion.

---

[3] The information in the SF-86 Form is relied upon by the TSA in conducting background checks into the fitness of its screeners. Concealed prior employment impedes investigators from discovering whether any problems arose during that employment which might reflect negatively on the trustworthiness of a screener.

During the closing argument, however, the government referred to evidence that was not admitted at trial: an answer given by Mr. Riccio in a deposition conducted by Vivian Dogan, a Wal-Mart attorney, in which Mr. Riccio allegedly denied having any employment after leaving Wal-Mart. Mr. Riccio objected before the prosecutor could complete the question, accurately observing that Ms. Dogan's statement was not in evidence. The court initially overruled the objection; the prosecutor then added, "So you recall Vivian Dogan saying, when she asked him if he had had any employment since Wal-Mart, since he left Wal-Mart and had his injury in 2004, February 3rd, 2004, he said, no, he hadn't. He's hiding from her he's at TSA."

At a sidebar conference immediately following the prosecutor's closing, Mr. Riccio moved for a mistrial based on these remarks. Because it recalled the trial evidence differently from Mr. Riccio, the court promised to look back at the record to make sure that its recollection was accurate. Mr. Riccio then gave his closing argument, during which he told the jury that the court had barred all evidence concerning the Wal-Mart deposition and that the prosecutor had made comments that were not based on evidence. The government did not return to the subject in its rebuttal.

After reviewing Ms. Dogan's testimony and its prior rulings on objections, the court addressed the prosecutor at another sidebar conference held just after the government's rebuttal, and indicated

- 5 -

that Mr. Riccio's answer to the question of whether he had been employed after Wal-Mart had not been admitted. The Court stated, "So I think – and I – I'm satisfied it's ambiguous enough that I can understand how you would have had the impression that she did say that, but she didn't." Nonetheless, the court held that a mistrial was not warranted but that it would give curative instructions. It further expressed that Mr. Riccio could renew his mistrial motion if the jury convicted him.

The district court then informed the jury that there was no evidence that Mr. Riccio had denied having other employment when questioned by Ms. Dogan during the deposition, and that the prosecutor was "incorrect" in stating otherwise. It further explained that "Mr. Riccio did not tell Ms. Dogan at any time that he was not employed elsewhere" and that "there's no evidence that Mr. Riccio told her that he was not working any place else." The court then instructed the jury that the issue of what Mr. Riccio had said or not said to Ms. Dogan during the deposition was irrelevant, reminded the jury that the trial was not about Mr. Riccio's worker's compensation claims, and told the jury to "put that one out of your mind." During the final instructions, delivered moments later, the court again cautioned that the closing arguments by the prosecutor and Mr. Riccio were not evidence. There was no criticism of the curative instruction or the final jury instructions.

## B.    The Jury Instructions

The court then charged the jury on the elements of a § 1001 violation.  While doing so, the court recited the language of the statute, including the "knowingly and willfully" element.  It further explained that to convict Mr. Riccio, the government had to prove, first, that he made the statement in question on a document submitted to the TSA; second, that the statement was materially false; third, that Mr. Riccio knew that the statement was false at the time he made it; and fourth, that Mr. Riccio made the statement voluntarily and intentionally.  As to the fourth element of the offense, the court stated that:

> ". . .the Government has to prove that, as I said, the statement was made voluntarily and that he intended to make the statement, in other words, that he didn't make the statement by accident or mistake, that he intended to make that statement and he knew the statement was false."

After the jury returned a guilty verdict, Mr. Riccio did not renew his mistrial motion.

## C.    Sentencing[4]

At sentencing, the district court admitted the Wal-Mart deposition in evidence.  After finding that there was "no dispute about the genuineness of the transcript," the court stated that the deposition transcript was relevant for sentencing purposes and explained in detail why it found it to be germane to its decision

---

[4] The standby counsel, Mr. Kevin J. Fitzgerald, represented Mr. Riccio at the sentencing hearing.

under 18 U.S.C. § 3553.  The only objection raised by Mr. Riccio to the admission of the deposition transcript was that the statements given during the deposition were not "relevant conduct" "based on the trial."  The Court rejected the objection, however, and stated that the transcript showed:

> . . . that either Mr. Riccio made false statements during the course of the deposition about whether he was then employed any place else or makes false statements - or, to the extent that the deposition indicates that he was collecting Worker's Comp. benefits from Wal-Mart during the time he worked at TSA, those things would be relevant on the question of motive, which would certainly be within the scope of this sentencing hearing."

Mr. Riccio was later sentenced to a three-month prison term, with two years of supervised release.

## II.  ANALYSIS

### A.  Mr. Riccio's Request for a Mistrial

Mr. Riccio argues on appeal that the district judge should have granted his motion for a mistrial based on the prosecutor's misconduct in making reference to evidence that was not admitted at trial.  He further contends that the district judge (1) failed to make a legal determination of the prejudicial effects of the prosecutor's misstatements in light of the evidence at trial; (2) did not ask to hear any argument regarding the prejudicial effect of the misstatements "applied to the issue of Mr. Riccio's credibility"; (3) made no findings about the risk of any prejudicial effect on the jury; (4) failed to state its reasoning for denying the mistrial motion; and (5) unduly gave a defective

jury instruction. Without a contemporaneous, aggressive curative instruction, the defense argued, ". . .there is no way that we can determine whether the jury did, in fact, disregard the prosecutor's misstatement when discussing the weight of all conflicting admissible evidence."

If, like in this case, the government admits that its recitation of the evidence was factually inaccurate, the misstatements constituted prosecutorial misconduct.[5]  See United States v. Azubike, 504 F.3d 30, 38 (1st Cir. 2007).

Because the prosecutor's statements constituted misconduct, we must then determine whether they resulted in prejudice to Mr. Riccio.  Id.; see also United States v. Manqual-García, 505 F.3d 1, 6 (1st Cir. 2007).  In determining whether the prosecutor's misconduct "so poisoned the well" as to require a new trial, this court has applied a three part test:  "(1) whether the prosecutor's conduct was isolated and/or [sic] deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the instruction could have affected the outcome of the case."  Azubike, 504 F.3d at 39; Manqual-García, 505 F.3d at 6; United States v. Cormier, 468 F.3d 63, 73 (1st Cir. 2006).

---

[5]  As we explained in United States v. Azubike, 504 F.3d 30, 38 (1st Cir. 2007), we use the term "misconduct" not to suggest deliberate wrongdoing but rather to signal a statement of fact that is mistaken or unsupported by any evidence.

Having carefully reviewed the transcript of the proceedings before the district court, it is clear that the district court did not abuse its discretion in denying Mr. Riccio's request for a mistrial.

Applying the first prong of the analysis, we agree with the government that the prosecutor's remarks were relatively brief in nature, were not deliberate and, as the district court itself found, stemmed from an "understandable misrecollection" of Ms. Dogan's testimony.

Second, the district court gave strong and thorough curative instructions to the jury. Moreover, the court informed the jury that there was no evidence that Mr. Riccio had denied having other employment when questioned by Ms. Dogan, and that the prosecutor was "incorrect" in stating otherwise. It explained that "Mr. Riccio did not tell Ms. Dogan at any time that he was not employed elsewhere" and that "there's no evidence that Mr. Riccio told her that he was not working any place else." The court then instructed the jury that the issue of what Mr. Riccio had said or not said to Ms. Dogan during the deposition was irrelevant, reminded the jury that the trial was not about the worker's compensation claims, and told the jury to "put that one out of your

mind." Finally, the court diligently cautioned that statements of the prosecutor and Mr. Riccio were not evidence.[6]

We believe the court's curative instructions - given without objection - were sufficiently explicit to allow the jury to render a fair verdict. This court has repeatedly held that a strong, explicit and thorough curative instruction to disregard improper comments by the prosecutor is sufficient to cure any prejudice from prosecutorial misconduct. Mangual-García, 505 F.3d at 7 (quoting United States v. Cormier, 468 F.3d 63, 74 (1st Cir. 2006) and United States v. Boldt, 929 F.3d 35, 41 (1st Cir. 1991)). Our holding dove tails with the fact that "our system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instruction . . .". United States v. Owens, 167 F.3d 739, 756 (1st Cir. 1999).

Finally, this is not a close case and there is no likelihood that the remarks could have affected its outcome. The record is clear that there was enough independent evidence that Mr. Riccio submitted a false SF-86 Form and that he did so intentionally. Considering the evidence in this case, the "terse character of the remarks" and the thorough curative instructions given by the court, it is unlikely that the remarks altered the result of the trial.

---

[6] Ironically, Mr. Riccio, in his brief, acknowledges the judge's "several clear orders" throughout the proceedings.

Thus, the district court correctly denied Mr. Riccio's motion for a mistrial. No error occurred.[7]

## B.   Jury Instructions

Mr. Riccio also argues that the district court erred in defining the intent element of § 1001 in its jury instructions and when it omitted the "knowingly and willfully" elements on the verdict form.  Without a jury instruction ". . . on the element of 'willfully', and with the omission of 'knowingly and willfully' on the verdict form we cannot speculate that the jury did, in fact, properly make the requisite scienter findings before reaching the legal conclusion of guilt in this case."

Because there was no objection raised below, our review, to which the parties agree, is for plain error.  To prevail on a plain error review, Mr. Riccio bears the heavy burden of showing (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings.    United States v. Medina-Martínez, 396 F.3d 1, 8 (1st Cir. 2005)(citing Johnson v.

---

[7] Mr. Riccio alleges three other errors, none of which were presented in support of his motion for a mistrial.  We will not consider any of them, however, as they have been waived for purposes of this appeal. United States v. Henry, 519 F.3d 69, 71 (1st Cir. 2008)(quoting United States v. Jiménez, 498 F.3d 82, 88 (1st Cir. 2007)(noting "the well-settled appellate rule that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"))

United States, 520 U.S. 461, 466-67 (1997); United States v. Olano, 507 U.S. 725, 732 (1993); and United States v. Gómez, 255 F.3d 31, 37 (1st Cir. 2001)). In applying this standard, we are mindful that "the plain-error exception is cold comfort to most defendants pursuing claims of instructional error." Medina-Martínez, 396 F.3d at 8 (internal citations omitted). See also United States v. Weston, 960 F.2d 212, 216 (1st Cir. 1992) ("while reversal of a conviction predicated on unpreserved instructional error is theoretically possible, [it is] the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.")

Nonetheless, this court is ". . . cognizant of the fundamental importance of adequate jury instructions. It is a long recognized principle in this Circuit that 'clear, easily understood jury instructions are vitally important in assuring that jurors grasp subtle or highly nuanced legal concepts'." Medina-Martínez, 396 F.3d at 8 (quoting United States v. DeStefano, 59 F.3d 1, 4 (1st Cir. 1995)).

Section 1001 requires proof that the false statement was made "knowingly and willfully". 18 U.S.C. § 1001(a). While interpreting the term willfulness, we have held that it means ". . . nothing more in this context than that the defendant knew that his statement was false when he made it or - which amounts in law to the same thing - consciously disregarded or averted his eyes

- 13 -

from its likely falsity." United States v. Gonsalves, 435 F.3d 64, 72 (1st Cir. 2006). In Gonsalves, we expressly rejected the argument that § 1001 requires "an intent to deceive." Id.; see also United States v. Yermian, 468 U.S. 63, 73 (1984). We need not go further.

The district court's instruction correctly followed Gonsalves and correctly described the willful element of § 1001 to the jury. Mr. Riccio presents no valid argument for us to deviate from this clear precedent.

Additionally, Mr. Riccio challenges the verdict form. His main argument is that the district court "withdrew the scienter requirement from the verdict form." His argument also fails as a matter of law for several reasons.

It is clear from the transcript that Mr. Riccio stated he had no objection to the verdict form. We have consistently expressed that a verdict form ". . . must be reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment." Sheek v. Asia Badger, Inc., 235 F.3d 687, 699 (1st Cir. 2000). Thus, we review the form as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury. Johnson v. Teamsters Local 559, 102 F.3d 21, 28 (1st Cir. 1996). As we previously have discussed, the district court properly

instructed the jury; it was not required to reiterate all the elements of a § 1001 violation in the verdict form.

Consequently, and because Mr. Riccio has not shown plain error here, either with respect to the instructions or the verdict form, we affirm the district court's decision.

## C. Sentencing

Mr. Riccio's main contention regarding his sentencing is that we should remand for resentencing because the district judge incorrectly admitted and considered the Wal-Mart deposition during sentencing. He maintains that the deposition was "unreliable" because it did not satisfy certain federal rules of evidence and civil procedure or Rhode Island's rules of civil procedure. Although Mr. Riccio argued before the district court that the statements in the deposition were not "relevant conduct", he never argued what he now argues before this court. Thus, our review is again for plain error. United States v. Earle, 488 F.3d 537, 549 (1st Cir. 2007) ("if the defendant fails to preserve a sentencing issue, we review only for plain error.") (internal citations omitted).

At sentencing, the district court is not directly bound by ordinary rules of evidence, and strict confrontation rules do not apply. United States v. Fanfan, 468 F.3d 7, 15 (1st Cir. 2006). Moreover, the sentencing court has broad discretion to accept even hearsay evidence at sentencing as long as the court concludes, with

proper support, that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy. United States v. Rodríquez, 336 F.3d 67, 71 (1st Cir. 2003).

Mr. Riccio's allegation that the deposition was unreliable is also mistaken. As the district judge noted before admitting Mr. Riccio's deposition into evidence, there was no dispute as to the transcript's genuineness. Contrary to Mr. Riccio's assertion, the district judge did not consider the deposition arbitrarily; he considered the deposition only after finding that it was relevant for sentencing purposes, and after he explained in detail why he found the deposition to be germane to his decision under 18 U.S.C. § 3553. Finally, and as correctly asserted by the government, ". . . if such sworn, transcribed, and counseled statements are too 'unreliable' to be considered at sentencing, it is hard to imagine what a court may rely upon short of in-court testimony."

The district court acted within the realm of its discretion in accepting Mr. Riccio's deposition for sentencing purposes and its decision must be affirmed.

**D. Judgment**

As a final argument, Mr. Riccio urges us to remand for a correction of his sentence because there is a conflict between the written judgment and the oral sentencing judgment. He specifically asks that we "remand for re-sentencing and direct the district court to exclude that part of the sentence imposing as a special

condition of supervised release that [he] must participate in a mental health treatment plan **'on an inpatient** or outpatient basis, as approved by the U.S. Probation Office,' because the sentencing judge issued no such directive."  (Emphasis added).

The court has reviewed the transcript of the sentencing proceedings and the written judgment later entered by the district court and finds that there is no conflict between them.  In fact, at sentencing, the district judge ordered that Mr. Riccio "undergo treatment for mental health counseling" as a condition of supervised release.  In the written judgment, on the other hand, the court expressed that he "shall participate in and satisfactorily complete a program of mental health counseling and treatment, on an inpatient or outpatient basis, as approved by the U.S. Probation Office."  As the government correctly asserts, the written judgment merely fleshes out the details of the more general oral judgment, but in no way is it inconsistent with the orally pronounced sentence.

Even if we were to construe Mr. Riccio's argument to be that the district court's decision to impose mental health counseling as a supervised release condition was mistaken, this argument also fails as a matter of law.  We briefly explain.

We review the imposition of special conditions of supervised release for abuse of discretion.  United States v. Allen, 312 F.3d 512, 514 (1st Cir. 2002).  Because Mr. Riccio had the opportunity

to object to this special condition and failed to do so, we review for plain error only. "The plain error hurdle is high. Under this standard, we may set aside the challenged portion of the instant sentence if, and only if, the appellant succeeds in showing an obvious and clear error under current law that affected his substantial rights." Id. (quoting United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000). "Even then, we may decline to correct an error that does not seriously affect the fairness, integrity or public reputation of judicial proceedings." Id.

United States Sentencing Guidelines § 5D1.3(d)(5) expressly allows courts to impose mental health counseling as a supervised release condition "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment." As it appears in the record, and after considering the presentence report, that reason was precisely why the court found that it was "important" for Mr. Riccio to continue treatment for mental health counseling as a condition of supervised release. Mr. Riccio raised no objections to the district court's determination. In fact, Mr. Riccio's attorney recommended that Mr. Riccio serve his prison sentence at FMC Devens because "not only do they have the medical facilities that would be able to treat Mr. Riccio's numerous illnesses, but also **have a mental health component there . . .**"

(Emphasis added).[8]  For these reasons, it is hard to construe his challenge on appeal as one against the imposition of the supervised release condition.  Accordingly, the sentence is affirmed.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[8] Neither is this a case where the district judge impermissibly delegated its authority to the probation officer when he ordered that Mr. Riccio participate in a mental health treatment.  See e.g. United States v. Allen, 312 F.3d 512, 516 (1st Cir. 2002) (Holding that "if [a defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer.  On the other hand, if the District Court was intending nothing more than to delegate to the probation officer details with respect to the selection and schedule of the program, such delegation was proper." (Internal citations omitted)); United States v. Peterson, 248 F.3d 79, 85 (2d Cir. 2001).