# United States Court of Appeals
## For the First Circuit

No. 15-1295

UNITED STATES,

Appellee,

v.

JOSE LATORRE-CACHO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Tina Schneider was on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, and Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, were on brief for appellee.

October 25, 2017

**BARRON**, **Circuit Judge**.  In 2014, a jury convicted Jose Latorre-Cacho ("Latorre") of one count of conspiracy in violation of 18 U.S.C. § 1962, which is a provision of the Racketeer Influenced and Corrupt Organization ("RICO") Act.  He now appeals.  Due to the portion of the jury instructions in which the District Court incorrectly described what constitutes "racketeering activity" under the Act, we vacate Latorre's conviction and remand for further proceedings.

## I.

In 2014, a multi-count, multi-defendant federal indictment in the District of Puerto Rico charged Latorre with RICO conspiracy in violation of 18 U.S.C. § 1962(d); conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841, 846 and 860; and conspiracy to possess firearms in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(o).  Latorre went to trial on all three counts.  A jury convicted him only of RICO conspiracy, which was listed as Count I of the indictment.  The District Court then sentenced Latorre to a term of 120 months, to be followed by five years' supervised release.

18 U.S.C. § 1962(d) makes it a crime to conspire to commit a RICO Act violation.  Id.  18 U.S.C. § 1962(c) provides that it is unlawful under the RICO Act "for any person employed by or associated with any enterprise engaged in, or the activities of

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id.

A separate provision of the statute defines what constitutes "racketeering activity" to include, among other conduct: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical." Id. § 1961. That definition does not, however, include the commission of firearms offenses, or even the involvement with firearms, as "racketeering activity."

This last fact about the RICO Act's definition of "racketeering activity" is a key component of one of Latorre's challenges to his conviction on appeal. In particular, that challenge takes aim at a portion of the extensive instructions that the District Court gave the jury about it what it had to find in order to convict Latorre of RICO conspiracy. In that portion of the instructions, the District Court, in the course of describing what constitutes "a pattern of racketeering activity," twice incorrectly stated that "firearms" constitutes "racketeering activity." Specifically, the District Court stated:

To establish a pattern of racketeering activity as alleged in Count I of the indictment, the government must prove three elements beyond a reasonable doubt.

First, that the defendant agreed that a conspirator, which could include the defendant himself, did or would intentionally commit or cause or aid and abet the commission of two or more of the racketeering acts of the types alleged in the indictment. Drug dealing, firearms, robberies, carjackings.

...

Later in these instructions, I will detail for you elements regarding each of these types of racketeering activities. But you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago, narcotics distribution, robberies, and carjackings, and of course firearms. (Emphases added).

On appeal, Latorre argues that his conviction must be overturned because of the mistaken instructions that "firearms" constitute "racketeering activity." He notes in this regard that the government put forth extensive evidence of both the enterprise's and Latorre's involvement with "firearms," and that Latorre testified at trial that he had no sufficient connection to the enterprise's racketeering activity (through firearms or otherwise) to be found guilty of conspiring to commit a RICO Act violation.

Latorre also presses three other challenges on appeal. He argues that certain special interrogatories concerning drug quantity set forth on the verdict form were unduly suggestive. He contends that it was error for the District Court, after the jury

- 4 -

told the District Court that it had reached a verdict and was called back into the courtroom, to have directed the jury to "complete" the verdict form after informing the jury that "something is missing."  Finally, he argues that the District Court erred in not including special interrogatories on the verdict form that would have required the jury to specify the "racketeering activity" that the jury found.

Because we conclude that Latorre's challenge to the jury instructions has merit, we do not reach his other challenges.  We thus both begin and end our analysis with the jury instructions issue.

## II.

In a federal criminal trial, the Fifth Amendment's guarantee of due process of law requires the government to prove beyond a reasonable doubt every element of the offense for which the defendant is charged.  Thus, jury instructions may violate a defendant's constitutional right to due process if they relieve the government of its obligation to meet that requirement.  See Middleton v. McNeil, 541 U.S. 433, 437 (2004).

At the same time, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process."  Id. (internal quotation and alteration omitted).  A

- 5 -

jury instruction thus violates the Constitution for failing to properly instruct the jury regarding the elements of an offense only when "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Id. (internal quotation omitted).

In this case, Latorre contends that the jury instructions permitted the jury to return a verdict on the RICO conspiracy count on a legally invalid theory of what constitutes "racketeering activity" by defining "racketeering activity" to include "firearms." See Skilling v. United States, 561 U.S. 358, 414 (2010) (explaining that "constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory") (citing Yates v. United States, 354 U.S. 298 (1957)). The government agrees that "racketeering activity" does not include "firearms." Thus, our task is to determine whether, after taking account of the District Court's erroneous description of "racketeering activity," the instructions in their "entirety -- and in the context of the evidence -- presented the relevant issues to the jury fairly and adequately." Sony BMG Entm't v. Tenenbaum, 660 F.3d 487, 503 (1st Cir. 2011).

Latorre concedes, however, that he did not object at trial to the portion of the jury instructions that he now contends rendered the instructions invalid. Thus, in undertaking our

inquiry into the import of the misstatements of law that the instructions contained regarding what constitutes "racketeering activity," we review only for plain error. United States v. Prieto, 812 F.3d 6, 17 (1st Cir. 2016). Under this plain error standard, Latorre "faces the 'heavy burden of showing (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Riccio, 529 F.3d 40, 46 (1st Cir. 2008)).

In general, we have explained that "[t]his multi-factor analysis makes the road to success under the plain error standard rather steep; hence, reversal constitutes a remedy that is granted sparingly." United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014) (quoting United States v. Gelin, 712 F.3d 612, 620 (1st Cir. 2013). And, consistent with that caution, we have emphasized that, even when a district court makes a clear or obvious error in instructing the jury, the third prong of the plain error standard still requires the defendant to show that the "outcome of the case would likely have changed" had the erroneous instruction not been given, United States v. Colon, 744 F.3d 752, 758 (1st Cir. 2014), or, put otherwise, that it is reasonably probable that the clear and obvious error affected the result of the proceedings, see United States v. Dominguez Benitez, 542 U.S.

- 7 -

74, 81-82 (2004) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). Nevertheless, we also have made clear that, to satisfy this third prong of the plain error standard, the defendant need not "prove by a preponderance of the evidence that but for [the] error things would have been different." United States v. Rodríguez, 735 F.3d 1, 11-12 (1st Cir. 2013) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 84 n.9 (2004) (insertion in the original)).

Finally, the fourth prong of the plain error standard imposes a distinct potential obstacle to a defendant successfully making an unpreserved challenge to a jury instruction's erroneous description of an element of an offense. This prong requires a defendant to show that the instructional error threatened the fairness, integrity, or public reputation of the judicial proceedings. United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014). And, we have made clear, judicial proceedings are not so affected if the evidence of the defendant's guilt at trial is "overwhelming" and "essentially uncontroverted." United States v. Cotton, 535 U.S. 625, 633 (2002) (citing Johnson v. United States, 520 U.S. 461, 470 (1997)).

## III.

Against this backdrop, the government seems to concede that, with respect to the first two prongs of the plain error standard, the District Court committed a clear and obvious error

when it instructed the jury that "racketeering activity" includes "firearms." The government argues, however, that Latorre cannot show the kind of effect on his substantial rights that he must show in order to satisfy the third prong of the plain error standard. Rather, the government contends, the problematic references to "firearms" are best understood to be "isolated" and "fleeting mistakes," and thus ones that cannot suffice to demonstrate that there is a reasonable probability that, absent these mistakes, the outcome at trial would have been different.[1] The government also contends, albeit cursorily, that Latorre

---

[1] In effect, then, the government treats what it seems to concede to be the "clear or obvious" misstatement of the law concerning "firearms" as a basis for concluding that the first and second prongs of the plain error test have been met, such that we must then proceed to the third prong of the inquiry. At that step of the inquiry, as the government frames it, we then must evaluate whether that clear or obvious misstatement resulted in an instruction that, considered in context, was sufficiently likely to mislead the jury so as to affect, all things considered, the substantial rights of the defendant. This approach accords with the one that we have followed before in evaluating jury instructions that contain a misstatement of the law. See United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014). Therefore, we do not analyze here, under the second prong of the plain error test, whether the instructions as a whole were clearly or obviously misleading. Cf. United States v. Romero, 32 F.3d 641, 651-52 (1st Cir. 1994). We instead focus only on the question the government presses -- whether the instructions as a whole, erroneous though a portion of them clearly was, affected the substantial rights of the defendant. We do note, however, that, on the facts of this case, we would find plain error under either approach, at least given the government's failure to make any record-based argument for concluding otherwise.

cannot meet his burden under the fourth prong of the plain error test.

In explaining why we do not agree with the government, we first describe why we conclude that the misstatements of law that the oral instructions contained regarding "firearms" constituting "racketeering activity" are quite serious. We then explain why we are not persuaded by the government's contention that the misstatements were adequately mitigated by other portions of the oral instructions that also referenced the types of conduct that constitute "racketeering activity." Next, we explain why our precedent does not support the government's contention that the written instructions ensured that the oral instructions, despite the misstatements that they contained, probably had no effect on the outcome of the trial. And, finally, we explain our reasons for concluding that, when considered in light of the evidence adduced at trial, the errors in the oral instructions were so likely to mislead the jury as to what conduct could constitute "a pattern of racketeering activity," 18 U.S.C. § 1961, that it is reasonably probable that those misstatements impacted the outcome at trial and thus that Latorre has demonstrated plain error.

A.

Although the government characterizes the District Court's misstatements regarding "firearms" constituting "racketeering activity" as "isolated" and "fleeting," it is hard

- 10 -

to credit that description just based on a review of the part of the instructions that contains the misstatements. The District Court in this part of the instructions expressly described "firearms" as "racketeering activity" not once, but twice. And the District Court did so in seemingly quite a considered fashion.

The District Court emphasized that it would "detail for [the jury] elements regarding each of these types of racketeering activities" -- which activities the District Court expressly described as including "firearms" -- "later in these instructions." What is more, the District Court went on to inform the jury that, important as these follow-on "details" about "these types of racketeering activities" would be, **"**you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago." And, finally, the District Court pointed out that such racketeering activity "of course" included "firearms." Thus, the legal mistake about the nature of the "pattern of racketeering activity" element was repeated, rather than isolated, and emphatic, rather than fleeting.

The government does contend the District Court in making these misstatements was merely providing a general description of "racketeering activity." By contrast, the government contends, when the District Court specifically described the racketeering activities allegedly engaged in by the enterprise at issue in this

particular case, the District Court at that point did not erroneously state that "firearms" constituted "racketeering activity." Instead, the District Court at that point listed only conduct that did qualify as "racketeering activity." Thus, the government suggests, the jury was likely to focus on that proper part of the instructions rather than the erroneous one, as only the proper part was focused on the particular charge of RICO conspiracy that had been brought against Latorre.

But, in fact, the problematic portion of the instructions did not offer merely a generalized account of "racketeering activity," such that we may presume that a jury would have been inclined to discount that description in the face of another part of the instructions that did not repeat the error and that was more tailored to the charges in this particular case. The problematic portion of the instructions referenced only types of conduct -- drug trafficking, robbery, carjacking and "firearms" -- that the indictment tied to the particular enterprise with which Latorre was charged with conspiring. Thus, the District Court in this part of the instructions appears to have been offering a description of "racketeering activity" that was itself tailored to Latorre's case. And that fact makes it probable that the jury followed that part of the instructions, as the government appears to accept that the jury would not have been inclined to ignore an instruction from the District Court about the nature of

"racketeering activity" that was specifically describing the nature of the offense that Latorre was charged with committing.

B.

Given how clearly the District Court instructed the jury that it could convict Latorre on an invalid legal theory of what constituted "racketeering activity," Latorre's challenge necessarily turns on whether, as the government contends, the rest of the instructions somehow sufficed to counteract that erroneous instruction. But, contrary to the government's contention, we conclude that the instructions as a whole did not suffice to disabuse the jury of the misimpression about what it needed to find that had been created by the erroneous part of the instructions. For that reason, we conclude that there was a reasonable probability that the error -- clear and obvious as it was -- misled the jury about what it needed to find in order to convict Latorre.

In arguing otherwise, the government points first to a portion of the oral instructions in which the District Court began by stating: "I will define for you what is racketeering activity. Racketeering activity is defined to include a variety, could be many, a variety of state crimes subject to imprisonment for more than one year, as well as a variety of Federal crimes subject to Federal indictment." The District Court then went on to state that "[y]ou are instructed as a matter of law that drug

trafficking, robbery, carjacking qualify as racketeering activities."

This part of the instructions would appear to provide the strongest support for the government's contention that the misstatements, in context, were less concerning than they otherwise would seem to have been. After all, the District Court purported to define "racketeering activity" in this portion of the instructions and, in doing so, mentioned by name only types of conduct that are "racketeering activity." But, this portion of the instructions did not come after -- and thereby arguably make up for -- the misstatements by the District Court in which it had named "firearms" as a type of "racketeering activity." Rather, this listing of only types of conduct that do in fact qualify as "racketeering activity" preceded the incorrect description of "firearms" constituting such activity that came later. And, given how emphatic and seemingly considered the subsequent mistaken description was, it is reasonably probable that the jury would not have ignored that mistaken description simply because it had earlier received the preceding description of "racketeering activity" that the government contends we must assume the jury privileged.

Further supporting this conclusion is the fact that the District Court did not at any point in the supposedly curative precedent passage actually state that the list of qualifying

racketeering activities that was being set forth was an exhaustive, as opposed to merely an illustrative, one. In fact, the sentence that immediately precedes the list suggests just the opposite, by stating that "[r]acketeering activity is defined to include a variety, could be many, a variety of state crimes subject to imprisonment for more than one year, as well as a variety of Federal crimes subject to Federal indictment." (Emphasis added). It is thus hard to see how it is reasonably probable that, just because the jury first heard a general description of "racketeering activity" that stressed how broad that category of activity is, the jury would have ignored as wrong the District Court's later and seemingly insistent instruction that a particular type of conduct -- "firearms" -- falls within that broad category.

The government next points to a supposedly compensating statement in the oral instructions that, unlike the statement that we have just addressed, does follow the misstatements about "firearms." But, while it may often make sense to presume that a jury gave more weight to a follow-on proper statement of the law than to a prior, erroneous one, see United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014), the context here does not permit us to do so.

In the follow-on statement that the government points to here, the District Court explained for the jury that it had to be unanimous as to the types of predicate "racketeering activity"

that it found in order to render a guilty verdict on the RICO
conspiracy count.  In elaborating on that particular point of law
regarding the requirement of unanimity as it applies to the
"pattern of racketeering activity" element, the District Court
made no mention of firearms.  Instead, the District Court referred
only to types of conduct that do in fact qualify as "racketeering
activity."   Specifically, the District Court explained the
unanimity requirement by stating that:

> [Y]our verdict must be unanimous as to which types of
> predicate racketeering activity the defendants agreed
> would be committed.  For example, at least two acts of
> drug trafficking, at least two acts of robbery,
> carjacking or any combination thereof. And you already
> know that the types of racketeering activity charged are
> drug trafficking, robbery and carjacking.

There is a problem, however, with portraying this
statement as if it conflicted with the District Court's earlier
statements that described "firearms" as "racketeering activity."
In the passage just quoted above, the District Court was not
purporting to define the type of conduct that constitutes
"racketeering activity," as the District Court had been purporting
to do in offering the prior, erroneous description that named
"firearms" as a type of "racketeering activity."  Rather, the
District Court was simply instructing the jury that it must
unanimously find that the enterprise engaged in a particular
predicate "racketeering activity" in order to convict Latorre for
RICO conspiracy and thus that the jury could not convict him on

the basis of having unanimously found only that the enterprise had engaged in some type of "racketeering activity," with some jurors having different ideas than others of what that activity was.

For that reason, when this portion of the instructions is considered in conjunction with the District Court's prior statements that "firearms" constitute "racketeering activity," this portion of the instructions could quite comfortably be understood to have been merely providing some of the "details" about the elements of "racketeering activity" that the earlier portion of the instructions had expressly informed the jury it would soon receive. And, given that the earlier portion of the instructions had been quite insistent in instructing the jury that "racketeering activity" encompassed "firearms," the nature of the "correct" subsequent instruction is such that it is reasonably probable that the jury followed the emphatic but mistaken portion of the instructions. For, we do not see on what basis we could simply assume that the jury would have ignored what it had been told in error -- that "firearms" was "of course" "racketeering activity" -- when it had not been instructed (even impliedly) to do so.

We note as well that, in setting forth the list of activities that qualify as "racketeering activity" in the part of the instructions that described the need for unanimity, the District Court introduced the list with the words "[f]or example."

- 17 -

For this reason, too, it is reasonably probable that the jury would not have understood the list that then followed to have been an implicit instruction to consider no other conduct as "racketeering activity," including even conduct such as "firearms" that the District Court had expressly said the jury "of course" could consider as "racketeering activity."

Indeed, if the District Court intended for this portion of the instructions to convey any such message, then it is not clear why the District Court used the words "for example." Moreover, whatever the District Court's intent may have been in instructing the jury as it did, the fact remains that it did use the introductory words "for example." Thus, this feature of the supposedly curative "correct" instruction further adds to the likelihood that the jury did just what we repeatedly have said that we must assume that juries do -- namely, follow the instructions in a way that, if possible, makes them cohere rather than conflict. See Francis v. Franklin, 471 U.S. 307, 321 n.7 (1985) (finding that a reasonable juror seeks "to make sense of" arguably conflicting instructions); see also United States v. Olano, 507 U.S. 725, 740 (1993) ("[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them") (citation omitted).

Of course, the last sentence in the passage from the instructions quoted above does state that "you already know that the types of racketeering activity charged are drug trafficking, robbery and carjacking." And this last sentence thus made no mention of "firearms." But, each of the activities mentioned in that sentence is also mentioned in the list of activities that is both set forth in the sentence that precedes it and that is introduced there by the words "for example." A jury thus could quite reasonably have understood this portion of the instructions merely to have been illustrating a point about unanimity by identifying possible groupings of some -- rather than all -- of the "racketeering activity" relevant to Latorre's case. In this respect, this portion of the instructions is easily read to have been doing nothing more than conveying some of the "details" about the "pattern of racketeering activity" element that the District Court had earlier expressly said that it would provide when it instructed the jury without equivocation that "racketeering activity" includes "firearms."

Finally, the government points to one other portion of the oral instructions that it contends conflicts with -- and thereby likely renders unproblematic -- the misstatements about "firearms" that came before. The government notes that the instructions expressly refer at one point to the indictment's description of "racketeering activity," and the government

- 19 -

contends that the indictment made clear to the jury that "firearms" do not qualify as such an activity. Thus, the government argues, the portion of the instructions that directed the jury's attention to the indictment (at least probably) served to disabuse the jury of whatever mistaken understanding of the law that the references to "firearms" might have engendered.

Notably, however, this supposedly curative reference in the oral instructions to the indictment does not actually purport to instruct the jury to rely solely on the indictment's description of "racketeering activity" to determine what conduct qualifies as such activity. Rather, the portion of the instructions that contains this reference instructs the jury about how to understand the import of the requirement that racketeering activities must be related to one another. So, once again, it seems reasonably probable -- though, of course, not certain -- that the jury would have thought the District Court was giving "details" about the "pattern of racketeering activity" element, which the District Court had earlier described to the jury as one that could be satisfied in part through evidence of the enterprise having engaged in activity involving "firearms."

Moreover, in referencing the indictment, the District Court did not direct the jury's attention to any particular portion of the indictment as the one that identifies "the types of racketeering activities described" therein. The absence of any

- 20 -

such directive matters because, while there are a number of separately titled sub-sections in Count I of the indictment -- which is the one that concerns RICO conspiracy -- none of those sub-sections is actually entitled "Racketeering Activity."  Nor do the headings or any other words in the indictment make it obvious which subsection, if any, defines the universe of conduct that is alleged to constitute "racketeering activity."

To be sure, the subsection in the indictment entitled "Racketeering Conspiracy" does use the phrase "racketeering activity" and then goes on to list only qualifying conduct.  By contrast, the subsection entitled "Means and Methods of the Conspiracy," in listing various activities in which the "enterprise" is alleged to have engaged, does not use that phrase.

But, significantly, the activities that are listed in that latter subsection also include, alongside "firearms," activities that are "racketeering activity."  There is, therefore, a reasonable probability the jury would have thought that the listed activities in this subsection were all qualifying ones.  After all, for that not to be the case, the jury would have had to have thought that the District Court had led the jury astray in earlier telling it orally in no uncertain terms that "firearms" was "of course" also "racketeering activity."

Further adding to the reasonable probability that the jury read the indictment to cohere rather than to conflict with the District Court's earlier, erroneous instruction is the following fact about the indictment. The subsection entitled "Roles of the Defendants," in which Latorre is specifically named, states that he "participated in <u>various illegal activities of the enterprise</u>, including robbery." (Emphasis added). Considered in conjunction with the ambiguities in the other subsections of the indictment, that sentence fairly invites the jury to conclude that the District Court meant what it said when it earlier explained: "you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago, narcotics distribution, robberies, and carjackings, <u>and of course firearms</u>." (Emphasis added).

In all events, the question is whether the oral instructions, taken as a whole, created a reasonable probability that the jury would have been misled about the conduct the government needed to prove to satisfy the "pattern of racketeering activity" element. And here, we think that the potential for the jury to have been so misled is substantial, notwithstanding that there were portions of the instructions that described the relevant law without misstating it.

To be sure, human speech being what it is, slip ups in oral instructions are bound to occur, and jurors may be understood

to have enough common sense to recognize them as such. For that reason, the due process guarantee is not necessarily violated just because a district court misstates the law at some points in the course of instructing a jury. See Middleton, 541 U.S. at 438 (finding no due process violation because, only "a rare combination of extremely refined lawyerly parsing of an instruction, and extremely gullible acceptance of a result that makes no conceivable sense" would have led a jury to have been misled by the mistaken description of an element of an offense once the instructions were considered as a whole).

But, by considering the context of the instructions as a whole, we have previously found the plain error standard to have been met notwithstanding that an arguably curative instruction was given following a clearly and obviously erroneous one. United States v. Delgado-Marrero, 744 F.3d 167, 190 (1st Cir. 2014) (finding that, in context, plain error standard was met even though government argued that special jury verdict and accompanying instructions cured the instructional defect arising from the omission of the reasonable doubt requirement for an element of the offense). In this case, the context requires that same conclusion. For, given the peculiarly emphatic nature of the erroneous instruction and the fact that the rest of the oral instructions could quite comfortably be read to cohere with the District Court's misstatement of the law, there is very good reason to be concerned

that the jury was misled by what it was told by the District Court. See Smith v. Jenkins, 732 F.3d 51, 69 (1st Cir. 2013) (holding that we presume that a jury follows the court's instructions, and acts according to its charge).

C.

Of course, the jury did also receive written instructions, and they contained no misstatements about what constitutes "racketeering activity." The government thus contends that the written instructions, which also must be considered in assessing the significance of the oral misstatements, suffice to diminish the concern that the oral misstatements affected Latorre's substantial rights.

The government points in particular to Pennue, 770 F.3d at 990, as support for that conclusion. But Pennue is a very different case. There, the district court, in conveying the instructions orally, appeared to have simply misread from the written instructions at one point by omitting a key word -- namely "not" -- such that the opposite of what was surely intended was said. See id. at 988-89.

In finding no plain error from what we described as that "slip of the tongue," we did reference the written instructions, which both were correct and stated that the law in a way that could not be reconciled with the misstatement. Id. at 990-91. But, we did so only after examining the entirety of the instructions that

the jury received, including the fact that the one incorrect oral instruction was "followed immediately by a correct [oral] instruction[.]"  Id. at 990.  In fact, in Pennue we expressly stated that "we would hesitate to rely on written instructions alone as a basis for concluding that the jury was not likely to be misled by an incorrect oral instruction."  Id.

We thus do not find the government's reliance on Pennue persuasive.  As we have explained, the errors in this case were too seemingly considered to be dismissed as ones that a reasonable jury would have recognized to be -- like the omission of the single word in Pennue -- the product of a mere slip of the tongue.  And that is especially so given that the rest of the oral instructions did not suffice to set the record straight by providing the jury accurate statements of the law that, in context, were likely to have been understood to have conflicted with the wrong ones.

D.

We also must consider the likely effect of the instructional error in light of the evidence that was adduced at trial.  Stefanik, 674 F.3d at 76.  But, a review of the record does not show that the evidence adduced at trial was of a kind that would render the District Court's notably insistent but still erroneous description of racketeering activity to be immaterial to the outcome at trial.  As Latorre points out, there was substantial evidence presented to the jury regarding firearms, both as to the

enterprise's involvement with them and as to Latorre's connections to firearms. In fact, the prosecutor in the government's closing argument stated, that Latorre "was an armed seller and enforcer" and "sold a firearm" and that members of the enterprise would "buy guns, bullets and drugs."

Thus, the instruction that "firearms" constituted "racketeering activity" -- if followed -- was hardly beside the point in Latorre's case. Nor does the government make any record-based argument for overlooking the error in the oral instructions; the government relies instead solely on the contention that the face of the instructions reveals that, as a whole, they were not likely to mislead. See United States v. Castro-Taveras, 841 F.3d 34, 54 (1st Cir. 2016) (finding that government did not argue a particular claim and thus waived that argument).[2]

_____

[2] Advancing an argument that the government does not make in connection with the jury instructions, the dissent notes that Latorre was acquitted of the count charging him with conspiracy to possess firearms in violation of 18 U.S.C. § 924(c)(1)(A), as if that acquittal demonstrates that the erroneous instruction regarding "firearms" was beside the point. But, with respect to that count, the indictment described the only crime that had been furthered as "drug trafficking," and the jury instructions did so as well. Thus, the acquittal on this count shows only that the jury acquitted Latorre of conspiracy to possess firearms in furtherance of drug trafficking. The acquittal does not show that the jury found that Latorre was not involved with "firearms." Consistent with this conclusion, we note that the jury also acquitted Latorre of conspiring to possess narcotics with the intent to distribute, which further suggests that the acquittal on the firearms conspiracy charge may simply have resulted from the jury's doubts about Latorre's involvement with drugs rather than from doubts about his involvement with firearms. Thus, the

We do recognize that, even if a jury instruction misleads the jury as to what it must find with respect to an element of the offense, that instruction may not affect the defendant's substantial rights if there is "overwhelming evidence that the jury still would have convicted absent the error." United States v. Colón Osorio, 360 F.3d 48, 52 (1st Cir. 2004). But, our review of the record reveals no basis for so concluding, given that the government emphasized at trial the ties between Latorre and the enterprise with respect to firearms in particular, that Latorre challenged those ties in his own testimony to the jury, and that he requested (unsuccessfully) special interrogatories on the verdict form as the specific predicate acts found. See Salinas v. United States, 552 U.S. 52, 65-66 (1997) (holding that "[i]n some cases the connection the defendant had to the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the Government's case.") Nor does the government make any argument to the contrary. See Castro-Taveras, 841 F.3d at 54.

Finally, given our reasons for finding the government's arguments insufficient to show that Latorre's substantial rights

---

acquittal to which the dissent points simply does not show that it is reasonably probable that, even if the jury was of the mistaken view that "firearms" is a "racketeering activity," the outcome at trial was not thereby affected. And that fact may explain why the government itself, which surely knows the record well, does not press this point.

were not affected, we do not see how the fourth prong of the plain error standard precludes Latorre from demonstrating plain error here. Moreover, while the government does assert that Latorre cannot satisfy that prong, it does so in only one sentence and without offering any explanation as to why. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (referring to "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

E.

In sum, the oral instructions in this case were most unusual. They set forth an invalid legal theory regarding what the government must prove as to a key element of the offense. They did so, moreover, in clear and considered terms by telling the jury, in effect, that it would be unreasonable to understand that element any other way.

Even more unusually, no statement in the oral instructions adequately countered that confidently-expressed misstatement of the law. Rather, the other statements to which the government points in the oral instructions were each framed in ways that are comfortably read to cohere with -- rather than to contravene -- the District Court's mistaken oral instruction.

And, finally, the evidence adduced at trial reinforces our conclusion that the jury was likely misled. That evidence put

in play the invalid description of the element of the offense that the District Court set forth orally. That evidence also was not so strong or uncontroverted as to render improbable the chance that juror confusion about whether "firearms" constitutes "racketeering activity" affected the verdict.

Significantly, the government does not actually challenge the view that the plain error standard is met by a case with attributes such as those that we have just described this case as having. Rather, the government argues only that this case does not have those attributes. And the government bases that assertion solely on its contention that the erroneous, orally-conveyed statements were adequately countered by statements elsewhere in the oral instructions that did not contain the error, as well as by the written instructions. But, for the reasons that we have given, the notion that the other statements in the oral instructions conflicted with the incorrect ones is belied by the way that those "correct" parts of the instructions were phrased. And we have never held that written instructions alone, simply by not repeating an error, suffice to clear up confusion that a misstatement in oral instructions otherwise would cause. Thus, the premise for the government's only argument against finding plain error is not supportable.[3]

---

[3] In discounting the probability of confusion in this case, the dissent consistently downplays the seriousness of the District

We should add that the evidence at trial -- as well as the prosecutor's closing argument -- made the enterprise's alleged involvement in firearms a central part of the case. Thus, these features of the case heighten our concern that the jury was misled. And, finally, there is one more feature of this case that causes concern -- the plausibility of a jury thinking that, just as the District Court had said, "firearms" are "of course" racketeering activity. For, we cannot see why we should presume that lay persons would think it so implausible that Congress, in trying to stamp out organized crime, intended to target organized criminal enterprises that were involved with firearms, that the District Court must have erred in instructing the jury that "firearms" were

---

Court's errors as mere "ad-libs." But the District Court did not tell the jurors to forget what they had been instructed from the bench and to rely solely on the instructions that had been given to them in writing. Rather, the District Court told the jury to use the written instructions as a reference in the event that they found it hard to "recollect" what they had been told orally. Thus, the fact that the District Court "ad-libbed" is itself the problem. Finally, the dissent repeatedly states that because "correct" instructions were given orally, only speculation suggests that the jury followed the incorrect ones. But we are obliged to read the instructions as a whole, and, in this case, each "correct" instruction, when so read, quite comfortably comports with rather than conflicts with the misstatements. Thus, only speculation supports the notion that the jurors did not presume that the District Court intended for its oral instructions to cohere, for ordinarily we assume that jurors have the common sense to do just that. Olano, 507 U.S. at 740. And thus only speculation supports the view that it is not reasonably probable that the jurors took the District Court seriously when it told them that "firearms" "of course" constituted "racketeering activity." See Franklin, 471 U.S. at 321.

"racketeering activity."  Thus, however rare hen's teeth may be, this is the rare (though not unprecedented, <u>see</u> <u>Delgado-Marrero</u>, 744 F.3d at 190) case of an unpreserved challenge to a clear and obvious instructional error that meets the plain error standard.

**IV.**

For these reasons, we **<u>vacate</u>** Latorre's conviction.


**-Dissenting Opinion Follows-**

**SELYA**, **Circuit Judge**, **dissenting.** Picture this: a district judge, charging the jury in a complex criminal case, reads his prepared (written) instructions to the jury. While doing so, he twice ad-libs remarks that are legally incorrect and run counter to the correct instructions both read to the jurors and provided to them in writing. The defendant's counsel, as well as counsel for a separately represented codefendant, are apparently unconcerned; neither lawyer interposes an objection. The jury deliberates and returns a split verdict, convicting the defendant on a charge of RICO conspiracy, but acquitting him on the other charges.

On appeal, the defendant is represented by new counsel, who, after scouring the record, argues that the judge's ad-libbed remarks demand vacation of the conviction. The majority acknowledges (as it must) that this claim was not preserved below and can be reviewed only for plain error. It nonetheless holds that — due to two errant phrases ad-libbed by the district judge — the conviction should be set aside.

This holding blurs the vital distinction between appellate review of preserved claims of error and appellate review of unpreserved claims of error. To make matters worse, the majority overlooks and/or undervalues telltales that argue powerfully against the existence of a reasonable probability that the district judge's ad-libbed remarks were outcome-determinative.

- 32 -

In my view, the appropriate standard of review, applied as precedent dictates, requires us to reject this unpreserved claim of error. Because the majority reaches a contrary result only by diluting the plain error standard, I respectfully dissent.

The plain error standard itself is not controversial: it requires the party advancing an unpreserved claim to establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Equally uncontroversial is the proposition that the proponent of an unpreserved claim (here, the defendant) must carry the devoir of persuasion as to each of these four elements. See United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017); United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005).

In this case, the district judge, when instructing the jury in open court, twice ad-libbed remarks that included "firearms" in his description of "racketeering activities" that might comprise a "pattern of racketeering activity." The government concedes that these ad-libbed remarks were manifestly incorrect and, thus, satisfy the first two elements of the plain error standard. This appeal turns, then, on the third element: whether the defendant has carried his burden of demonstrating that

the judge's bevue "affected the defendant's substantial rights." Duarte, 246 F.3d at 60.

To accomplish this task, the defendant must show, at a minimum, a reasonable probability that, but for the alleged error, the outcome of the trial would have been different. See Bramley, 847 F.3d at 7. This is a daunting standard, requiring the defendant to show "some level of certainty and particularity[,]" and we consistently have declined invitations to "indulge in . . . speculation" on plain error review. Id. at 7-8 (citing Jones v. United States, 527 U.S. 373, 394-95 (1999)). It is not enough that there might be a possibility — even a strong possibility — that the jury was confused by a contested instruction; rather, for a reviewing court to find plain error, there must be a reasonable probability that, but for the instruction, the jury would not have convicted the defendant.

In the case at hand, one important integer in the "reasonable probability" calculus is that the judge, on several other occasions during the delivery of his charge, correctly described the activities that might comprise a "pattern of racketeering activity." Far from "notably insist[ing]" on the erroneous instruction, ante at 25, the judge excluded the term "firearms" from the relevant taxonomy every other time that he explained "racketeering activity" — and he did so consistently in the written instructions given to the jury. Where, as here, a

- 34 -

judge gives conflicting versions of an element of an offense — one correct, one not — it is virtually impossible to say, to a reasonable degree of probability, that the jury went down one road rather than the other.  See, e.g., United States v. Pennue, 770 F.3d 985, 989-91 (1st Cir. 2014); cf. Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) (concluding that state court did not "unreasonably apply federal law when it found that there was no reasonable likelihood [a] jury was misled" by erroneous instruction when other correct instructions were also given).

The cases in which appellate courts have set aside convictions based on unpreserved claims of non-structural instructional error are hen's-teeth rare.  Tellingly, the majority does not cite a single decision in which we — or any other court, for that matter — have set aside a conviction, on plain error review, when a trial judge has given an undeniably correct instruction but intermingled it with an incorrect instruction on the same point.  Cf. Pennue, 770 F.3d at 989 (finding that appellant failed to show that a different result was "reasonably likely" when court gave both erroneous and correct reasonable doubt instructions); United States v. Rodríguez, 735 F.3d 1, 11-12 (1st Cir. 2013) (finding that appellant failed to show "reasonable probability" of different result when verdict form erroneously contradicted judge's presumption of innocence instruction).  As we

made clear in Rodríguez, 735 F.3d at 12, materials instructing the jury "must be read in conjunction with one another."

The majority's failure to cite any case on point is not for lack of trying. Yet, the closest the majority comes to exhuming such a case is United States v. Delgado-Marrero, 744 F.3d 167 (1st Cir. 2014). That case, though, is readily distinguishable. There, the judge failed to instruct the jury, in a special verdict form, that its findings on drug quantity had to be made beyond a reasonable doubt. Id. at 186. The error was patent, and the only curative language to which the government could point was that the district court had told the jury that its deliberations "would be under the same terms and conditions" as the other elements of the offense. Id. (internal quotation marks omitted). Such oblique language is not even faintly comparable to the detailed and correct explanations of "racketeering activity" provided by the district judge at numerous points throughout the trial in this case.

So, too, the majority's effort to conjure up a "reasonable probability" of a different result by reading the available tea leaves is unpersuasive. This effort turns a blind eye to the strength of the government's case. Moreover, it either ignores or undervalues a number of other salient considerations. I offer a representative sampling:

The district judge sent into the jury room copies of both his prepared (written) instructions and the indictment. He advised the jurors, before delivering his oral instructions, that they would have in the jury room copies of these documents, which would be available for their reference in case of doubt.

- The district judge sent into the jury room copies of both his prepared (written) instructions and the indictment. He advised the jurors, before delivering his oral instructions, that they would have in the jury room copies of these documents, which would be available for their reference in case of doubt. Importantly, the judge made a trenchant observation: he warned the jury, that "[i]t is impossible for anyone to be able to recollect all those principles of law out of one reading by somebody. You need to have it in black and white so you can use it as a reference during your deliberations." Both the written set of instructions and the indictment correctly described the nature of the "racketeering activities" that might comprise a proscribed "pattern of racketeering activity." Neither document was infected by the misstatements that marred the judge's ad-libbed remarks. Given these facts, common sense suggests that, if any confusion existed, the jurors would heed the judge's warning and look to the written instructions.

- The record makes manifest that the parties focused at trial on the correct components of a "pattern of racketeering activity." The prosecutor — both in his opening statement and in his summation — stressed that the relevant racketeering predicates consisted of drug-trafficking and robbery — offenses that unquestionably fell within the proper purview of a "pattern of racketeering activity." Nothing in defense counsel's opening statement or final argument suggested anything to the contrary. Courts have recognized that the way in which parties pitch their arguments to a jury may have decretory significance in determining the existence vel non of plain error. See, e.g., United States v. Gaviria, 116 F.3d 1498, 1511 (D.C. Cir. 1997) (giving weight to fact that defense and prosecution both had accurately described government's burden to the jury as evidence that incorrect instruction on the same point was not plain error).

- The jury acquitted the defendant on the firearms conspiracy charge under 18 U.S.C. §§ 924(c)(1)(A) and 924(o). Because these were the only firearms offenses, the elements of which were presented to the jury, this acquittal further supports the fact that the racketeering activities for which the jury found the

- 38 -

defendant culpable were the racketeering activities actually proscribed under 18 U.S.C. § 1962, not the firearm-focused activities arguably suggested by the flawed instructions.

To say more would be to paint the lily. On this scumbled record, it is sheer guesswork to speculate what effect, if any, the judge's ad-libbed remarks had on the jury's resolution of the RICO conspiracy count. And guesswork, of course, is an insufficient basis on which to ground a finding of a reasonable probability that an unpreserved error altered the outcome of a case. See Bramley, 847 F.3d at 7. After all, where the impact of an alleged error is unclear, it should be an a fortiori proposition that "a defendant cannot meet his burden of showing that the error actually affected his substantial rights." Jones, 527 U.S. at 394-95.

We long have recognized that "the plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). Such a hurdle is not merely a procedural frill; rather, it plays a vital role in our multi-tiered system of justice. As the Supreme Court has explained, timely and specific objections "enable a trial court to correct any . . . mistakes before the jury retires" and, thus, to avoid the significant costs "of an unnecessary retrial." Jones, 527 U.S. at 387-88. And this hurdle, "high in all events, nowhere looms larger than in the context of

alleged instructional errors."  <u>United States</u> v. <u>Paniagua-Ramos</u>, 251 F.3d 242, 246 (1st Cir. 2001).  The majority's approach shrinks this traditional hurdle so drastically that it becomes no hurdle at all.

The crux of the problem in this case is that the majority gives this burden nothing more than lip service — and grudging lip service at that.  It is not the government's job to rule out any possibility that the jury was confused by the erroneous instruction.  That would put the shoe on the wrong foot.  Instead, it is the defendant's job to carry the burden of affirmatively demonstrating a reasonable probability that, but for the error, he would not have been convicted.  Speculating about possibilities does little to show that the defendant succeeded in hoisting that burden here.

I believe that a proper application of the plain error doctrine vitiates the claim of error that the majority finds dispositive and that the defendant's remaining claims of error are impuissant.  Consequently, the defendant's conviction should be affirmed.  Because I fear that the majority, in reaching a different result, not only is wrong but also is reducing the difference between review of preserved and unpreserved claims of error to the vanishing point, I respectfully dissent.